# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
June 26, 2001 Session

## STATE OF TENNESSEE v. ROBERT L. EASTERLY

**Appeal from the Criminal Court for Knox County**
**No. 67425     Mary Beth Leibowitz, Judge**

_____

**No. E2000-02625-CCA-R9-CO**
**September 28, 2001**
_____

In this interlocutory appeal, Robert L. Easterly challenges the Knox County Criminal Court's order denying his motion to dismiss a presentment against him. Easterly claims that the state is barred from prosecuting him for the offense charged in the presentment because (1) the case was not joined with a prior prosecution of him in Sevier County, (2) the criminal conduct charged in the presentment is the same offense for double jeopardy purposes as the case in which he was convicted in Sevier County, and (3) the delay in commencement of the Knox County prosecution violates his speedy trial and due process rights. Because we agree with the defendant that both the mandatory joinder rule and double jeopardy principles bar dual prosecutions, we reverse the trial court's order and dismiss the presentment.

**Tenn. R. App. P. 9; Judgment of the Criminal Court Reversed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined and JOSEPH M. TIPTON, J., did not participate.

Wade V. Davies, Knoxville, Tennessee, for the Appellant, Robert L. Easterly.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leon Franks, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On March 13, 1998, an undercover agent of the Tennessee Bureau of Investigation called the defendant, Robert L. Easterly, at his Knox County home and requested that he bring a quantity of cocaine to Sevier County for the agent's purchase. The defendant agreed and did so. The agent met with the defendant inside the defendant's car, and the two discussed cocaine. The defendant was then detained. He refused to allow law enforcement officials to search his Knox County residence, so they obtained a search warrant. Upon its execution, officials discovered a large quantity of cocaine inside the house. The defendant was arrested, although the record does not

reflect whether his arrest was pursuant to the Sevier County transaction, the Knox County possession, or both.[1]

Thereafter, the defendant was charged in Sevier County on June 1, 1998 by presentment.[2] Counsel was appointed. On February 16, 1999, the defendant pleaded guilty to possession with intent to sell or deliver one-half gram or more of cocaine for the March 13, 1998 incident in Sevier County. Two days later, a presentment was returned in Knox County charging the defendant with possession with intent to sell more than 300 grams of cocaine and possession with intent to deliver more than 300 grams of cocaine.[3] These charges relate to the cocaine discovered in the defendant's home on March 13, 1998. The defendant was sentenced in Sevier County on March 29, 1999 to an eight-year sentence. The court imposed the manner of service as ten months in the local jail and the remainder in the Community Corrections program.

Sometime after sentencing, defense counsel learned that the Tennessee Bureau of Investigation had contacted the defendant about the Knox County presentment. Defense counsel spoke with a Knox County assistant district attorney on April 6, 1999, and the assistant confirmed that the Knox County Grand Jury had returned a presentment against the defendant. The assistant district attorney was unable to provide counsel with a copy of the sealed presentment, however. Defense counsel told the assistant district attorney that the defendant would turn himself in early to begin serving his Sevier County conviction and requested that the defendant be served at the Sevier County Jail with the capias for the Knox County presentment. Defense counsel claims that the assistant district attorney agreed to this arrangement. The assistant district attorney testified at a Knox County motion hearing that he agreed to "try" to have the capias served on the defendant in the Sevier County Jail. Nevertheless, the capias remained unserved, and defense counsel sent a letter to the assistant district attorney on June 17, 1999 advising him of that fact.

In any event, after the defendant completed serving his Sevier County confinement, he was transferred to Knox County detention. He was arraigned on March 3, 2000, and the presentment was finally served. The same attorney who had represented the defendant in his Sevier County case was appointed to represent him in Knox County.

---

[1]At oral argument, defense counsel's factual recitation was that the defendant was arrested in Sevier County and taken back to his Knox County home, where a search warrant was executed. The arrest warrant is not in the appellate record. The only pertinent information in the appellate record is contained in a TBI file memorandum and a search warrant affidavit. The memorandum says the defendant was "detained . . . for further investigation" after an undercover agent "had a general conversation about cocaine" with the defendant at the transaction location in Sevier County. The defendant had in his possession approximately one ounce of cocaine; however, there is conflicting information in the record whether this cocaine was in the floorboard of his vehicle or had already been delivered to the undercover agent. The defendant "refused cooperation" for a search of his Knox County residence, and a search warrant was obtained.

[2]There were other presentments returned in Sevier County, but they have not been included in the appellate record and appear to have no bearing on the issues before us.

[3]The Knox County presentment indicates that the case was considered by the grand jury on February 11, 1999. No explanation appears of record why the presentment was not filed until February 18, 1999.

Defense counsel moved to dismiss the Knox County presentment on the basis of violation of the mandatory joinder rule of Tennessee Rule of Criminal Procedure 8(a), violation of double jeopardy principles, and unreasonable delay in the prosecution violating speedy trial and due process principles. Following a hearing, the trial court denied the motion, finding that the delay in "the process of serving" the Knox County presentment was not "unreasonable or intentional . . . nor . . . for the purpose of denying Mr. Easterly his rights." The court also ruled that the Sevier and Knox County offenses "were brought in separate counties, hence they could not have been brought in the same jurisdiction to the same court." The court reasoned that, although it was "a <u>very</u> close call," the fact that the alleged offenses took place in two different counties defeated mandatory joinder and double jeopardy concerns. (Emphasis in original.)

On the defendant's application, the trial court granted permission to appeal its order pursuant to Tennessee Rule of Appellate Procedure 9. This court accepted the application, and the case is now before us for disposition.

We address the defendant's issues in the following order. First, do double jeopardy principles bar the Knox County prosecution? Second, does Rule 8(a) of the Tennessee Rules of Criminal Procedure require that the Knox County and Sevier County offenses be joined in a single prosecution? Third, were the defendant's speedy trial and due process rights violated by unreasonable delay? As will be explained below, we answer the first two questions affirmatively and, therefore, reverse the trial court's order and dismiss the Knox County presentment.

## I - Double Jeopardy

Constitutional provisions protect a person from more than once being placed in jeopardy of conviction of a crime. U.S. Const. amends V, XIV; Tenn. Const. art I, § 10. For offenses to support multiple convictions, they must be "wholly separate and distinct." *See, e.g., State v. Goins*, 705 S.W.2d 648, 650 (Tenn. 1986). The defendant in this case claims that his possessory conduct in Sevier County and his possessory conduct in Knox County constitute but one culpable course of conduct and cannot form the basis for separate prosecutions.

There are two basic scenarios involving multiple convictions which raise double jeopardy concerns. First, a single course of conduct may be proscribed by two or more different statutes and charged under more than one of these statutes. *See, e.g., State v. Denton*, 938 S.W.2d 373 (Tenn. 1996). Second, a defendant may engage in a criminal episode that violates only one statute but is charged as multiple counts under that statute. *See, e.g., State v. Phillips*, 924 S.W.2d 662 (Tenn. 1996). The scenario presented in the case at bar is the latter. That is, the defendant engaged in a course of criminal conduct which the state charged as multiple violations of the same statute. Our task is to determine whether double jeopardy principles permit multiple prosecutions and punishments in this instance. *See State v. Barney*, 986 S.W.2d 545 (Tenn. 1999) (applying *Denton* and *Phillips* inquiries to double jeopardy question).

The seminal case for double-jeopardy analysis of multiple count, same statute crimes is *Phillips*. That was a sex-offense case, and its inquiry is specific to that type of crime. *See generally Phillips*, 924 S.W.2d 662. Its principles, however, have been adapted for other types of crimes, as well. *See generally State v . Epps*, 989 S.W.2d 742, 745 (Tenn. Crim. App. 1998). Those principles are:

> 1. A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution;
>
> 2. If each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous; and
>
> 3. Where time and location separate and distinguish the commission of the offenses, the offenses cannot be said to have arisen out of a single wrongful act.

*Id*. at 745 (quoting *Phillips*, 924 S.W.2d at 665). Other matters to be considered are "the nature of the act; the time elapsed between the alleged conduct; the intent of the accused, i.e., was a new intent formed; and cumulative punishment . . . ." *Id.* at 745. None of these factors other than the nature of the act is determinative. *Id*.

In advancing its argument that double jeopardy does not prohibit multiple prosecutions in the case at bar, the state claims that the evidence of the two crimes is different because the Sevier County possession involved a relatively small quantity of cocaine for the purpose of sale, whereas the Knox County possession involved a large quantity of cocaine stored in a residence. We acknowledge that the evidence of the two offenses is not identical, but the Knox and Sevier Counties offenses appear very much to be a division of a single wrongful act. The defendant possessed a large amount of contraband, which he stored in his home. Although he separated part of it for the purpose of selling it in Sevier County, the state induced him to do so and has now attempted to prosecute him separately for the cocaine he possessed in one location until the state's inducement. The nature of the act for which the defendant was prosecuted in both cases - - that is, possession - - is the same for both offenses. The defendant was simultaneously in possession of the cocaine he kept in his home in Knox County and the subdivided portion he took to Sevier County, and the locations were different only because of the state's involvement. The defendant's intent was the same for both offenses.

Thus, we conclude that conviction of two violations of the same statute under the circumstances presented here would offend double jeopardy principles. *Accord Brown v. Ohio*, 432 U.S. 161, 97 S. Ct. 2221 (1977) (double jeopardy principles prohibited defendant's conviction of both auto theft and joyriding of stolen vehicle nine days later). To hold otherwise would give license to prosecutors to "avoid [the Double Jeopardy Clause's] limitation by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Id*., 432 U.S. at 169, 97 S. Ct. at 2227; *see Lumpkins v. State*, 584 S.W.2d 244, 245 (Tenn. Crim. App. 1979); *cf. Ramsey v. State*, 37

Tenn. (5 Sneed) 652, 655 (1858) ("It is granted that a man may commit several distinct offenses in the same act, and that the prosecutor may carve as large an offense out of the transaction as he can; yet the better rule seems to be, that he is not at liberty to cut but once.").

In so holding, we have considered the state's citation to *State v. James David Lamor Perry*, No. E1999-00271-CCA-R3-CD (Tenn. Crim. App., Knoxville, Sept. 5, 2000), *perm. app. denied* (Tenn. 2001). Although that case is factually similar to the one at bar, it nevertheless is not controlling. As in the present case, the defendant in *James David Lamor Perry* was apprehended at the scene of a drug transaction. *Id.*, slip op. at 2-3. Cocaine and marijuana were discovered in the vehicle in which he was a passenger. *Id.*, slip op. at 3. His home was searched several hours later, and more cocaine and marijuana were discovered. *Id.* The defendant was charged with two counts of cocaine possession within a school zone and two counts of marijuana possession. *Id.* He was convicted of both cocaine offenses and one of the marijuana offenses. *Id.*, slip op. at 4. On appeal, the defendant argued that double jeopardy principles prohibited his dual cocaine possession convictions. *Id.*, slip op. at 10. The court rejected this claim, holding that *Denton*'s same criminal episode inquiry did not prohibit dual convictions and punishments. *Id.* The convictions of which the defendant complained were both for cocaine possession *within a school zone. Id.*, slip op. at 3-4. The evidence showed that the possession in the co-defendant's vehicle took place within a *different* school zone than the possession at the defendant's residence. *Id.*, slip op. at 10.

*James David Lamor Perry* is distinguishable in several respects. The crimes in the present case do not involve drug possession within multiple school zones. They simply involve possession of a quantity of cocaine, some of which was separated for the purpose of an individual drug transaction. This factual distinction is also significant in view of *Phillips'* inquiry into separate time and location between offenses. *See Phillips*, 924 S.W.2d at 665. Further, there is a significant distinction to be found in the involvement of a law enforcement officer in the present case. The uncontroverted evidence is that the officer induced the defendant away from his home with some of the contraband to a location in Sevier County. The defendant was thereby induced by the state to separate a lesser quantity of cocaine from a larger quantity. In contrast, in *James David Lamor Perry*, law enforcement was simply alerted by an informant that a transaction was to take place. *James David Lamor Perry,* slip op. at 2. There is no indication in the *Perry* opinion that the state had any involvement in inducing or arranging the transaction.

We also have not overlooked several prior decisions of this court which reach different results on similar facts. *See, e.g., State v. Jose D. Holmes*, No. 02C01-9411-CR-00251 (Tenn. Crim. App., Jackson, Nov. 22, 1995), *perm. app. denied* (Tenn. 1996); *State v. Walter Jones,* No. 02C01-9307-CR-00155 (Tenn. Crim. App., Jackson, Aug. 24, 1994), *perm. app. denied* (Tenn. 1995); *State v. Chitwood*, 735 S.W.2d 471 (Tenn. Crim. App. 1987). Those cases predate the analytical framework of *Denton* and *Phillips*. Further, and perhaps more significantly, those cases are distinguishable because the defendants therein were charged with an actual sale of drugs as well as possession of drugs, rather than two possessory offenses. *See* Tenn. Code Ann. § 39-17-417,

Sentencing Comm'n Comments (1997) ("The commission wished to make it clear that each of these acts was a separate offense and therefore listed the manufacture, delivery, sale or possession with intent to manufacture, deliver or sell each as a separate subsection.").

In summary, we hold that the defendant's double jeopardy rights bar the Knox County prosecution.[4] For that reason, the trial court erred in denying the defendant's motion to dismiss the Knox County presentment.

## II - Rule 8(a)

Notwithstanding our holding that double jeopardy bars the Knox County prosecution, it is our duty to address the remaining issues. *See Jacobs v. State*, 224 Tenn. 106, 107, 450 S.W.2d 581, 581 (1970) (all issues should be addressed by court of criminal appeals)*; State v. Pendergrass*, 13 S.W.3d 389, 395 (Tenn. Crim. App. 1999) (court of criminal appeals should address all issues due to possibility of appeal of court's decision), *perm. app. denied* (Tenn. 2000). We will therefore endeavor to do so.

The Rules of Criminal Procedure provide,

> Two or more offenses shall be joined in the same indictment, presentment or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13 if the offenses are based upon the same conduct or arise from the same criminal episode and if such offenses are known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s) and if they are within the jurisdiction of a single court. A defendant shall not be subject to separate trials for multiple offenses falling within this subsection unless they are severed pursuant to Rule 14.[5]

Tenn. R. Crim. P. 8(a) (footnote added). The trial court found and the state concedes on appeal that the offenses charged in Knox and Sevier Counties arose from the same criminal episode and were known to the appropriate prosecuting official at the time the Sevier County presentment was

---

[4] In the double jeopardy argument section of the defendant's brief, he claims that even if double jeopardy principles do not bar dual prosecution, due process and "law of the land" constitutional provisions do because the Sevier County offense is "essentially incidental" to the Knox County offense. *Compare Denton*, 817 S.W.2d at 378 *with State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991). We believe, however, that the double jeopardy analysis is the more appropriate framework for analyzing this issue.

[5] In general terms, Rule 14 provides for severance of offenses for reasons of fairness. *See generally* Tenn. R. Crim. P. 14(b).

returned. The record before us supports the trial court's determination and the state's concession. Therefore, the only question is whether both offenses are within the jurisdiction of a single court.

In that regard, Rule 18 is instructive. It provides, "If one or more elements of an offense are committed in one county and one or more elements in another, the offense may be prosecuted in either county." Tenn. R. Crim. P. 18(b). The offenses in this case consist of knowingly possessing a controlled substance with intent to sell or deliver. *See* Tenn. Code Ann. § 39-17-417(a)(4) (Supp. 2000). It is beyond question that all of the elements of the offense alleged in the Knox County presentment occurred solely in Knox County. The issue is whether one or more elements of the Sevier County offense occurred in Knox County, thereby giving Knox County concurrent jurisdiction with Sevier County over the offense.

There is evidence that a TBI agent called the defendant in Knox County and requested he bring cocaine to Sevier County for sale. Law enforcement officers saw the defendant travel from his Knox County home to the appointed location in Sevier County. The defendant had cocaine in his possession, and more cocaine was later found at his Knox County home. Circumstantially, the uncontroverted evidence strongly suggests that while he was in Knox County, the defendant possessed cocaine with the intent to sell or deliver. We therefore conclude that Knox County had jurisdiction to prosecute the Sevier County offense. *Cf. Jerry W. Burton v. State*, No. 03C01-9809-CR-00340 (Tenn. Crim. App., Knoxville, July 23, 1999) (defendant properly prosecuted in Hawkins County for first degree criminal sexual contact where rape occurred in Hamblen County; defendant controlled victims by holding knife to their throats in Hawkins County before raping and throwing them from a bridge in Hawkins County after rape); *State v. Hampton*, 634 S.W.2d 635 (Tenn. Crim. App. 1982) (defendant who was convicted of unlawful credit card possession properly prosecuted in Benton County, although he was apprehended and credit cards were discovered in his possession in Decatur County following high-speed automobile chase that originated in Benton County; court noting that crime was one of possession, which is continuing, and that evidence was overwhelming that defendant did not stop and obtain credit cards after crossing into Decatur County). That conclusion leads us to a further determination that Rule 8(a) does, indeed, require that the offenses be joined for prosecution. Because that rule provides that "[a] defendant *shall* not be subject to separate trials for multiple offenses falling within this subsection," Tenn. R. Crim. P. 8(a) (emphasis added), the Knox County prosecution is barred. Even if we have incorrectly determined in section I above that double jeopardy principles bar the Knox County prosecution, the defendant was nevertheless entitled under Rule 8(a) to prevail on his motion to dismiss the Knox County presentment.

**III - Delay**

Finally, we consider the defendant's claim that unreasonable delay prevents the state from proceeding on the Knox County prosecution.[6] We will consider the claim both as one of speedy trial and of due process guarantees.

## A. Speedy Trial

The United States and Tennessee Constitutions guarantee the criminally accused the right to a speedy trial in all criminal prosecutions. U.S. Const. amends. VI, XIV; Tenn. Const. art. I, § 9. The right to a speedy trial is also statutory in Tennessee. Tenn. Code Ann. § 40-14-101 (1997). In addition, the Tennessee Rules of Criminal Procedure provide for the dismissal of an indictment, presentment, information or criminal complaint "[i]f there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court, or if there is unnecessary delay in bringing a defendant to trial . . . ." Tenn. R. Crim. P. 48(b). The right to a speedy trial is unaffected by the fact that the accused is incarcerated. *Arrowsmith v. State*, 131 Tenn. 480, 486, 175 S.W. 545, 546 (1914); *see State v. Wood*, 924 S.W.2d 342, 347 (Tenn. 1996).

A defendant's speedy trial rights, according to the United States Supreme Court, do not arise "until after formal accusation, either by arrest or by grand jury action." *United States v. Marion*, 404 U.S. 307, 320, 92 S. Ct. 455, 463 (1971). Recently, the Tennessee Supreme Court decided that the issuance of an arrest warrant, by itself, is not enough to trigger the protection of the Sixth Amendment right to a speedy trial. *State v. Utley*, 956 S.W.2d 489, 493 (Tenn. 1997). Either a formal grand jury action or the actual restraints of an arrest are required. *Id*.

When an accused seeks the dismissal of a prosecution based upon the denial of the constitutional right to a speedy trial, the accused must establish a period of delay that is "presumptively prejudicial." *State v. Jefferson*, 938 S.W.2d 1, 12 (Tenn. Crim. App. 1996) (citing *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992)); *see Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). The length of the delay turns upon the peculiar circumstances of each case, and delay that can be tolerated for "an ordinary street crime" is generally much less than for a serious, complex felony charge. *Barker*, 407 U.S. at 530-31, 92 S. Ct. at 2193. A delay of one year or longer marks the point at which courts deem the delay lengthy enough to trigger further inquiry. *Doggett*, 505 U.S. at 652 n.1, 112 S. Ct. at 2691 n.1; *Utley*, 956 S.W.2d at 494.

---

[6] As in section II above, we will discuss this issue despite the dispositive nature of our holding in section I due to the possibility of further review. *See Jacobs v. State*, 224 Tenn. 106, 107, 450 S.W.2d 581, 581 (1970); *State v. Pendergrass*, 13 S.W.3d 389, 395 (Tenn. Crim. App. 1999).

If this one year threshold is crossed, "the presumption that delay has prejudiced the accused intensifies over time"; nevertheless, a balancing test of the following factors determines the merits of the speedy trial issue: (1) the length of the delay, (2) the reasons for the delay, (3) the accused's assertion of the right to speedy trial, and (4) the prejudice resulting from the delay. *State v. Michael D. Simmons* — S.W.3d — , — , No. M1999-00099-SC-R11-CD, slip op. at 3 (Tenn., Sept. 7, 2001); *see Barker*, 407 U.S. at 531, 92 S. Ct. at 2192 (establishing four-part balancing test); *State v. Bishop*, 493 S.W.2d 81, 82-83 (Tenn. 1973) (recognizing and adopting the balancing test of *Barker*). On appellate review, the trial court's determination in this regard is subject to review for abuse of discretion. *See Jefferson*, 938 S.W.2d at 9.

## 1.      Length of Delay

Our first task is to determine the triggering date for measuring the period of the delay. There are two possibilities – the date of the defendant's arrest on March 13, 1998 or the date of the return of the Knox County presentment on February 18, 1999. The appellate record does not contain the arrest warrant, and there is no other information to indicate whether the arrest was pursuant to the Sevier County possession offense of which the defendant was ultimately convicted, the alleged Knox County possession offense, or both. In the absence of this information from the appellate record, we will presume that the March 1998 arrest was for the Sevier County offense only, and we will use the later date of February 18, 1999 as the triggering date. *See* Tenn. R. App. P. 24(b) (requiring the appellant to bear the primary burden of ensuring that the appellate record conveys a fair, accurate and complete account of what transpired with respect to the issues forming the bases of appeal).

Thus, for our purposes, the speedy trial clock began to tick on February 18, 1999 when the Knox County presentment was returned. A year and eight months elapsed between the presentment's return and the defendant's motion for interlocutory appeal on October 18, 1999. Given the delay of more than a year between grand jury action and an as-yet-to-take-place trial, further inquiry is warranted. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192; *Bishop*, 493 S.W.2d at 83-84; however, "this period of delay is not necessarily unreasonable when compared to other cases." *Michael D. Simmons*, — S.W.3d at —, slip op. at 4 (delay of 23 months deemed "not necessarily unreasonable"). In our view, the delay is not egregious, given the fact that the defendant is charged with a Class A felony.

## 2.      Reason for Delay

The next factor is the reason for the delay. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192; *Bishop*, 493 S.W.2d at 83-84. The reasons for delay fall within four categories: (1) intentional delay for tactical advantage or to harass the accused, (2) bureaucratic indifference or negligence, (3) necessary delay for fair and effective prosecution, and (4) delay in which the defense has been complicit. *Wood*, 924 S.W.2d at 346-47. Intentional delay must be weighted heavily against the government, while negligence or oversight are considered against the government but afforded comparatively more neutral weight. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. Valid reasons, such as the inability to locate a witness, justify an appropriate delay. *Id.*, 92 S. Ct. at 2192.

The record in the present case, as in *Michael D. Simmons*, shows negligence or oversight on the part of the state. *See Michael D. Simmons*, — S.W.3d at —, slip op. at 4. This factor weighs against the state "to some extent." *Id.*, slip op. at 4 ; *see State v. Glenn T. Tidwell*, No. M2000-00538-CCA-R3-CD, slip op. at 3-4 (Tenn. Crim. App., Nashville, July 9, 2001) (delay in serving warrant due to understaffing of sheriff's department is chargeable to the state); *cf. State v. Bishop*, 493 S.W.2d 81, 84 (Tenn. 1973) (state's lack of financial resources to pay for transportation of defendant who was incarcerated in another state was not legitimate reason to deny him a speedy trial). "However, when the reason for the delay is negligence, the weight to be assigned this factor differs depending upon the length of the delay." *Michael D. Simmons*, — S.W.3d at —, slip op. at 4. The delay in the present case is not substantial, and consequently the reason for the delay does not weigh heavily against the state. *Id.*

### 3. Assertion of Speedy Trial Right

The third factor is whether the defendant has asserted his right to a speedy trial. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192; *Bishop*, 493 S.W.2d at 83-84. The record reflects that the defendant, through counsel who was then representing him on his Sevier County offense, sought to expedite the Knox County proceedings on April 6, 1999 and June 17, 1999. Although neither communication appears to have contained a demand for speedy trial, as such, it is clear from the evidence that the tenor of communication on both dates was to that effect. Further, the letter counsel sent to the assistant district attorney in June 1999 expressed concern about prejudice as a result of the delay. Approximately six months after the presentment was served and counsel was appointed, the defendant more formally asserted his speedy trial rights by filing a motion to dismiss based upon denial of a speedy trial. Given these circumstances, the defendant tolled the passage of time by asserting his speedy trial rights, and in the balancing analysis there is no detriment to him on the question of asserting his rights.

### 4. Prejudice from Delay

The final *Barker* factor relates to the prejudice resulting from the delay. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192; *Bishop*, 493 S.W.2d at 83-84. The defendant has three interests protected by the prejudice factor: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility of impairment to preparation of the defense. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193. The prejudice inquiry is the most important of the *Barker* considerations, particularly as regards the ability to prepare a defense. *State v. Vance*, 888 S.W.2d 776, 778 (Tenn. Crim. App. 1994).

The opportunity for concurrent, or at least partially concurrent, sentencing may be lost when a delay occurs. *Smith v. Hooey*, 393 U.S. 374, 378, 89 S. Ct. 575, 577; *see Utley*, 956 S.W.2d at 495; *State v. Joseph Hart*, No. 02C01-9902-CC-00075, slip op. at 9-10 (Tenn. Crim. App., Jackson, Sept. 20, 1999). In this case, the defendant received an eight-year sentence in Sevier County, and he faces a sentence of fifteen to 60 years if convicted of the Class A felony charged in Knox County. *See* Tenn. Code Ann. § 40-35-111(b)(1) (1997) (authorized term of imprisonment for Class A felony). To the extent that the defendant has served a portion of his eight-year Sevier County sentence, including all of the incarcerative portion of that sentence, he has been denied the opportunity for partially concurrent sentencing for an equal period of time in his Knox County case. It must be remembered, though, that during the period of the delay the defendant served only a small portion of the entire eight-year Sevier County sentence. We also note that there is no evidence in this case that the conditions of defendant's Sevier County jail confinement were more oppressive due to the outstanding Knox County charge. *See Smith*, 393 U.S. at 378, 89 S. Ct. at 577. Moreover, the defendant has established only a "mere possibility" of concurrent sentencing. *Michael D. Simmons*, — S.W.3d at —, slip op. at 6. "A lost *possibility* of obtaining concurrent sentencing is not sufficient prejudice to establish a speedy trial violation." *Id*., slip op. at 6. (Emphasis added.)

The second portion of the prejudice inquiry focuses on anxiety and concern of the accused. *See Barker*, 407 U.S. at 532, 92 S. Ct. at 2193. The record in this case is silent, and we decline to speculate beyond the normal anxiety and concern attendant to felony charges.

The third portion of the prejudice inquiry is that of impairment to the defense. *See id.* The Supreme Court has recognized the obvious difficulty in showing prejudice from the passage of time in eroding evidence and witness recollections. *Doggett*, 505 U.S. at 655, 112 S. Ct. at 2692. It has said that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.*, 112 S. Ct. at 2692. However, courts will still look for a demonstration of actual prejudice. *See, e.g., Wood*, 924 S.W.2d at 348-49; *State v. Eric Larez*, No. 03C01-9810-CR-00379, slip op. at 10-11 (Tenn. Crim. App., Knoxville, Nov. 4, 1999), *perm. app. denied* (Tenn. 2000); *State v. Roger David Browder*, No. 02C01-9606-GS-00201, slip op. at 11 (Tenn. Crim. App., Jackson, Feb. 9, 1998) ("[E]ven though affirmative proof of particularized prejudice is not essential to every speedy trial claim . . . , we find it difficult to evaluate the degree to which the delay prejudiced the defendant absent some specific information about the deprivations which he incurred."), *perm. app. denied* (Tenn. 1998).

With respect to the death of Mr. Sutton, the defendant acknowledges that he has not demonstrated when this potential witness died. In fact, there is evidence in the record that Mr. Sutton expired before the district attorney's office received the investigative file in mid-1998. This was prior to commencement of the delay of which the defendant complains. In other words, the delay did not cause the defendant to lose any potential benefit of this witness's participation in the investigation or trial of the case. *See Barker*, 407 U.S. at 532, 92 S. Ct. at 2193 ("If witnesses die or disappear *during a delay*, the prejudice is obvious.") (emphasis added).

Finally, the defendant claims he was unable to prepare a defense while incarcerated. His only specific allegation is that "the investigation of Mr. Sutton did not take place to attempt to obtain information about him that at least would have been fresh shortly after Mr. Sutton's death." There is no allegation what this investigation might have revealed, and the record is generally ambiguous regarding Mr. Sutton's involvement in the Knox County crime.[7] The record in this case is simply too vague for us to conclude that any actual prejudice to preparation of the defense has been shown.

In summary, we find an absence of actual prejudice. Given the brevity of the delay following the expiration of the first year, any presumed prejudice is of little or no consequence.

### 5.    Balance of Factors

In balancing the *Barker* factors, the state's bureaucratic indifference or negligence in serving the defendant with the charges and the defendant's timely assertion of his speedy trial rights weigh modestly in his favor; however, we balance these considerations against the length of the delay itself. Although the delay of one year and eight months is lengthy enough to trigger a *Barker* inquiry, it is not unreasonably lengthy in view of the complexity and gravity inherent in a dual-count Class A felony drug case. *See Barker*, 407 U.S. at 530-31, 92 S. Ct. at 2193 (allowing for more delay in case of complex felony case). As such, we view the delay as not egregious given the gravity of the offenses charged. We believe the length of the delay in view of the type of case is a strong counterbalance to the factors favoring the defendant. The defendant has not demonstrated error in the trial court's determination that he suffered no speedy trial violation.

### B.    Due Process

---

[7]Apparently, Mr. Sutton was living in the defendant's home at the time of the offenses. At his Sevier County sentencing, the defendant claimed that he was disabled but not yet eligible for Social Security benefits. The defendant maintains that at Sutton's urging, he began selling drugs to make ends meet until he became eligible for Social Security benefits.

While speedy trial guarantees protect an accused from unreasonable delay between the commencement of adversarial proceedings and trial, due process provides that protection for the time between the commission of the crime and the commencement of adversarial proceedings. *State v. Gray*, 917 S.W.2d 668, 673 (Tenn. 1996). This due process guarantee is found in the Fifth Amendment and Article I, sections 8 and 9 of the Tennessee Constitution. *See* U.S. Const. amends. V, XIV; Tenn. Const. art. 1, §§ 8, 9; *Gray*, 917 S.W.2d at 673.

The defendant in this case argues that his due process rights were violated because "the delay was almost two years from the alleged offense until Mr. Easterly was able to see the presentment." We disagree with the defendant's method of calculating the delay time. As stated above, due process guarantees protect against unreasonable delay between the commission of the offense and the commencement of adversarial proceedings, that is, arrest or formal charge. *See State v. Dykes*, 803 S.W.2d 250, 255-56 (Tenn. Crim. App. 1990) (due process inquiry based upon delay between offense and indictment, defendant apparently not arrested prior to indictment), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). *Halquist v. State*, 489 S.W.2d 88, 93 (Tenn. Crim. App. 1972) (due process inquiry based upon delay between offense and arrest), *overruled on other grounds by State v. Jones*, 598 S.W.2d 209 (Tenn. 1980). Thus, despite the defendant's argument to the contrary, our law does *not* support a due process inquiry based upon delay from offense *to arraignment*.

We therefore endeavor to apply the proper measure to the facts at bar. The defendant before us is alleged to have committed an offense in Knox County on March 13, 1998. He was arrested that day, although, as discussed previously, the record does not reveal whether the arrest was pursuant to the Sevier County offense, the alleged Knox County offense, or both. Without knowing the basis of the March 1998 arrest, we cannot determine whether to measure the delay period with the March 1998 arrest or the February 1999 return of the presentment. If the former, both the alleged offense and the arrest occurred the same day. If the latter, the delay was approximately eleven months. Without complete information in the record relative to the March 1998 arrest, we cannot effectively address this issue. *See* Tenn. R. App. P. 24(b). We note, however, that a same-day arrest cannot in good faith be considered a delay at all. Moreover, even if the delay were assumed to be the eleven months between the alleged offense and the return of the presentment, the record before us does not support a finding that the state caused the delay to harass the defendant or gain tactical advantage. *See Dykes*, 803 S.W.2d at 255 (due process violation will be found where (1) there has been a delay, (2) it has caused the accused to suffer actual prejudice, and (3) the state caused the delay to gain tactical advantage or to harass the defendant).

In summary, we conclude that the successive prosecution in Knox County is barred under Tennessee Rule of Criminal Procedure 8(a). Even if it were not so barred, double jeopardy principles would prevent the state from proceeding against the defendant on the Knox County presentment. The Knox County presentment is dismissed with prejudice.

_____

JAMES CURWOOD WITT, JR., JUDGE