IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 18, 2019 Session

## STATE OF TENNESSEE v. DOUGLAS EDWARD CHRISTIAN

**Appeal from the Circuit Court for Coffee County**
**No. 41726-F  Vanessa Jackson, Judge**

_____

### No. M2018-00320-CCA-R3-CD
_____

Defendant, Douglas Edward Christian, was convicted of Class B felony possession of .5 grams or more of methamphetamine, a Schedule II controlled substance, with the intent to sell or deliver (Count 1); Class B felony possession of .5 grams or more of cocaine, a Schedule II controlled substance, with the intent to sell or deliver (Count 2); Class D felony possession of a Schedule III controlled substance, Bu[p]reno[r]phine, with the intent to sell or deliver (Count 3); and Class A misdemeanor possession of marijuana, a Schedule VI controlled substance (Count 4).  The trial court sentenced Defendant to an effective term of twenty-years as a Range II offender.  On appeal, Defendant claims that the trial court "erroneously used foreign judgments" to sentence him as a Range II offender, considered unsubstantiated information in sentencing him, wrongly denied pretrial jail credits, and erred by denying Defendant his right to a speedy trial.  After a thorough review of the record and briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and D. KELLY THOMAS, JR., J., joined.

Drew Justice (on appeal), Murfreesboro, Tennessee, and Bud L. Sharp (at trial) McMinnville, Tennessee, for the appellant, Douglas Edward Christian.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Craig Northcott, District Attorney General; and Joshua C. Powell, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Procedural Background

Because Defendant claims that he was denied his right to a speedy trial, we will include numerous dates in the procedural background section of this opinion.

In March 2015, the Coffee County Grand Jury returned a four-count indictment in Case No. 41,726F charging Defendant with Class B felony possession of .5 grams or more of methamphetamine, a Schedule II controlled substance, with the intent to sell or deliver (Count 1); Class B felony possession of .5 grams or more of cocaine, a Schedule II controlled substance, with the intent to sell or deliver (Count 2); Class D felony possession of a Schedule III controlled substance, Bu[p]reno[r]phine, with the intent to sell or deliver (Count 3); and Class A misdemeanor possession of marijuana, a Schedule VI controlled substance (Count 4). After being released on bond, Defendant failed to appear for arraignment and was rearrested on May 11, 2015. Although he was denied bond, he was mistakenly released from custody. On August 8, 2015, Defendant was arrested on new charges.

On January 5, 2016, Defendant's retained counsel filed a pretrial motion to suppress, a motion for medical care, and a motion to set or lower bond. The State responded to the motions on February 8. After numerous discussions with the State, retained counsel filed amended motions on February 23, 2016. Because of the expected time required to argue the motions, the parties agreed to a special setting. On May 27, 2016, Defendant filed a motion to suppress statements and a motion to suppress text messages. On June 1, 2016, the parties appeared in court, and the motions were set for argument. On July 14, 2016, the motions were argued.

On July 20, 2016, retained counsel moved to withdraw. On August 1, the trial court entered orders setting a $250,000 "blanket bond" for this case and three other cases pending against Defendant, granting Defendant's motion to be provided with proper diabetic care, and denying the other motions. New counsel entered an appearance on September 7, 2016, and filed a motion to reduce bond and a "Motion for a Fast and Speedy Trial" on September 13, 2016.

On April 5, 2017, the trial court heard Defendant's "Motion for a Fast and Speedy Trial" in this case before starting the jury trial in Case No. 42,4567F. After argument of counsel, the trial court found that because the case had been pending for over a year, there was "a presumption of prejudice which triggers examination of the next factors." After argument, the court denied the motion, finding:

If you look at the reasons for the delay, there's absolutely no showing of any intent by the State to delay this matter to the prejudice of the defendant or for any tactical advantage. That's no showing of any bureaucratic indifference.

Quite frankly, most of the delay in this matter was acquiesced to by the defense or was a result of waiting on the defense to amend certain -- their motions to suppress. It appears that [the Assistant District Attorney] was very diligent in communicating with defense counsel in trying to get those motions in a position where they could be heard, so that factor weighs against the defense in this case.

Again, the delay I believe was necessary for a fair prosecution of the case because it was necessary to hear those motions to suppress.[1]

On September 25, 2017, Defendant moved to sever his offenses in the instant case, alleging that there were two separate incidents. On September 27, 2017, Defendant filed another motion to dismiss for failure to grant a speedy trial. On October 16, the State moved to amend the indictment to remove the word "sell" from Counts 1, 2, and 3. The motion was granted the same day.

**Jury Trial**

Because Defendant does not contest the sufficiency of the evidence, we will limit our summary of the evidence presented at the jury trial to that necessary to give context to the issues raised.

The case was tried by jury on October 17, 2017. Manchester Police Department (MPD) Investigator Butch Stewart testified that he received multiple text messages concerning Defendant on November 2, 2014. The author of the text messages said that Defendant was in a white Chevrolet Equinox but that she did not know his location. Investigator Stewart was unable to locate the vehicle. On November 3, 2014, Investigator Stewart received additional text messages from a different person stating that Defendant was at the Ambassador Motel in Manchester to deliver drugs. Investigator Stewart and two other MPD officers went to the motel to investigate. Defendant was standing beside the Equinox when they arrived, but he hurried into a motel room when he saw the officers. Investigator Stewart and the MPD officers knocked on the door. Defendant opened the door, was courteous to the officers, and upon request gave officers

---

[1] The written order denying Defendant's "Motion for a Fast and Speedy Trial" was entered on November 13, 2017.

permission to search his motel room and the Equinox located in the parking lot. Inside the motel room, officers found empty plastic bags in the toilet. Inside the vehicle, Investigator Stewart found a pill bottle containing cocaine. Defendant was arrested at that time. Two days later, a motel maintenance employee notified MPD that he found a bag of drugs clogging up the toilet in the room Defendant had rented.

Investigator Stewart testified in detail concerning the drugs found in the bag recovered from the toilet. He also testified about telephone calls made by Defendant from jail that were recorded. The recordings were played for the jury. Investigator Stewart stated that, in one recording, Defendant said that he "flushed everything," and all the police found was little plastic bags. Defendant stated, "I lost five or six thousand." Numerous texts between Defendant and other individuals before Defendant arrived in Manchester were introduced. Defendant sent a text message stating that he had various drugs, including "clear" which is crystal methamphetamine, "girl" which is cocaine, pain pills, and "loud" which is marijuana. Defendant asked one person, who wanted to buy drugs, if she could get a ride to Ambassador Inn. Defendant responded, "[C]ome to exit 110 Ambassador Inn go thru front its building on right go behind u will see white van room 120." Shortly before Defendant was arrested, he texted that he "was missing a pill bottle with my girl and clear[.]"

The jury found Defendant guilty of the charged offenses.

**Sentencing Hearing**

The trial court conducted a sentencing hearing on November 29, 2017. At the beginning of the sentencing hearing, the State announced that it would be relying on two previous out-of-state convictions to establish that Defendant was a Range II offender. Defense counsel "agree[d] that the conviction in 1987 of a federal crime was [Defendant], and there's another conviction from 1977 that [Defendant] received a sentence for, but it's not real[ly] clear to me as to what he was actually pleading guilty to."

The State introduced, as Exhibit 1, several Fulton Superior Court (Georgia) documents related to Case No. A-34238. The documents included a certified copy of an indictment dated September 13, 1976, charging Defendant with rape, and a certified copy of a "Felony Sentence" signed by the judge of the Superior Court on August 22, 1977, sentencing Defendant to three years. Immediately below the title "Felony Sentence," appeared the word "Charge" followed by a blank in which "Rape" was handwritten. The State argued that the definition of rape in Georgia in 1976 was almost "word-for-word" the same as the statute in Tennessee in effect at that time.

- 4 -

Defendant's counsel argued that because there was "no order attached" to the "Felony Sentence" document, it was unclear what Defendant "pled to." Counsel stated that Defendant "received a three-year sentence, so I find it hard to believe that's a rape conviction unless the sentences were a lot more lenient back then." Counsel stated that Defendant claimed that the three-year sentence in the Georgia case was for a plea to "mischievous conduct." However, Defendant presented no testimony or documentary evidence to show that he pled to an offense other than rape.

The second conviction on which the State relied was a 1987 conviction for "conspiracy to possess with intent to distribute and to distribute cocaine, in violation of Title 21, U.S.C. section 846" from United States District Court of Florida. Defendant was sentenced to seven years. The State argued that the federal statute under which Defendant was convicted was similar to the statute in effect in Tennessee at the time and would have been a Class D felony if committed in Tennessee. Defendant did not contest this conviction at the sentencing hearing.

Jenna Miller, a former employee for the Tennessee Department of Correction, testified that she prepared two presentence reports. Ms. Miller stated that she went over the first presentence report with the Defendant while he was incarcerated. In regards to Defendant's prior record of criminal convictions, she said Defendant "raised a question about one of them -- I believe it was a dismissed case -- but everything else he agreed to." After reviewing the report with Defendant, Ms. Miller prepared a second report that had a new statement of Defendant attached. The second presentence report was entered as Exhibit 4. On cross-examination, Ms. Miller stated that the report contains "the convictions that I got from calling Georgia, Florida, Alabama, all of those cases. They have sent me copies of stuff of where there's convictions[.]'"

Coffee County Sheriff Department Investigator James Sherrill testified that he had been approached by two Clayton County, Georgia, district attorney investigators concerning a pending homicide. Over the objection of Defendant, Investigator Sherrill testified about his meeting with the Georgia investigators. A certified copy of a true bill from Clayton County was admitted as an exhibit through Investigator Sherrill. In Count 1 of the twelve-count true bill, Defendant was charged with "the offense of malice murder." Count 1 stated that "on or about the 3rd day of March, 2015, [Defendant] did unlawfully, with malice aforethought, cause the death of Makenzie Puyear, a human being, by providing her with Methamphetamine, Morphine, Fentanyl, and Ethylone, and knowing that she would consume them[.]" Investigator Sherrill stated that the Georgia investigators wanted to talk to witnesses in Coffee County about "an individual that overdosed in a KOA campground in Coffee County." According to Investigator Sherrill, the victim in Coffee County had been raped by Defendant. The victim was later flown to Vanderbilt where she was treated and ultimately released.

**Sentencing Order**

The trial court took the matter under advisement and, on December 19, 2017, entered "Sentencing Findings of Fact for Offenses Committed on or after June 7, 2005," (Sentencing Order) in which the court stated:

> In determining the appropriate sentence for this offense, this Court has considered the evidence presented at the trial and the sentencing hearing, the pre-sentence report, the principles of sentencing and arguments made as to sentencing alternatives, the nature and characteristics of the criminal conduct involved, the evidence and information offered by the parties on the mitigating and enhancement factors, any statistical information provided by the administrative office of the Court . . . , any statement the Defendant made, if any, on his own behalf about sentencing, and the Defendant's potential for rehabilitation or treatment.
>
> . . . .
>
> The Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Defendant's extensive criminal history spans over forty (40) years and at least four (4) states. His criminal history is well documented in the pre-sentence Investigation Report (Exhibit 4) and the certified copies of convictions entered into evidence (Exhibit 3). Defendant's history includes convictions for rape, possession of controlled substances, violation of the sex offender registration act, assault, battery, and burglary.
>
> In addition to these numerous convictions, Defendant has been indicted in Clayton County, Georgia, in Case No. CR026285, in a twelve (12) count indictment for Malice Murder, three (3) counts of Felony Murder, three (3) counts of Possession of a Controlled Substance with Intent to Distribute, Criminal Attempt to Commit Rape and Tampering with Evidence. He has been indicted in Spalding County, Georgia for Possession of a Firearm by a Felon. The Defendant also has been indicted in Coffee County, Tennessee, in two additional cases. In Case No. 42749, the Defendant is charged with Violation of the Sex Offender Registration Act, and in Case No. 42024, he is charged with Failure to Appear.
>
> The Defendant had no hesitation about committing a crime when the risk to human life was high. The evidence at trial established that Defendant was transporting dangerous illegal drugs from Georgia to

- 6 -

Tennessee for sale. The drugs included heroin, cocaine, methamphetamine and marijuana. In the pending case in Clayton[,] Georgia, it is alleged that Defendant supplied drugs to a woman in a motel room who later overdosed and died. There was also testimony from Investigator James Sherrill with the Coffee County Sheriff's Department that Defendant had supplied drugs to a woman at the KOA campground in Manchester, Tennessee. This woman also overdosed and was taken to a hospital. She fortunately survived. The Defendant is a dangerous felon, who uses illegal drugs to prey on addicts and prostitutes.

The court found that Defendant had "a minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes" and was therefore a Range II multiple offender pursuant to Tennessee Code Annotated section 40-35-106. Defendant was sentenced as a Range II offender to twenty years' incarceration in Counts 1 and 2 and to six years' incarceration in Count 3. Defendant was sentenced to 11 months and 29 days' incarceration in Count 4. The four sentences were ordered to be served concurrently.

After the trial court denied his motion for new trial, Defendant timely appealed.

## Analysis

On appeal, Defendant claims that the trial court "erroneously used foreign judgments" to sentence him as a Range II offender, considered unsubstantiated information in sentencing him, wrongly denied pretrial jail credits, and erred by denying Defendant his right to a speedy trial. The State argues that the trial court properly sentenced Defendant and properly denied the speedy trial motions and that the pretrial jail credit issue is waived because it was not raised in the trial court. We agree with the State.

### Sentence Range

A defendant may appeal from the length, range, manner of service, or consecutive alignment of a sentence imposed by the trial court. Tenn. Code Ann. § 40-35-401 (2017). On appeal, a defendant bears the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401 (2017), Sent'g Comm'n Cmts.

Defendant claims that the trial court erred in finding that he was a Range II multiple offender. The standard of review applicable to the length of sentences adopted in *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012), has now been applied to the trial court's determination of an offender's range classification. *State v. Laylon Ward, Jr.*, No.

W2017-00736-CCA-R3-CD, 2018 WL 1091792, at *2 (Tenn. Crim. App. Feb. 23, 2018) (citing *State v. Joseph Cordell Brewer, III*, No. W2014-01347-CCA-R3-CD, 2015 WL 4060103, at *7-8 (Tenn. Crim. App. June 1, 2015)). If the trial court's determination that Defendant was a Range II multiple offender is supported by the record and reflects that the trial court properly applied the purposes and principles of sentencing, the trial court's decision is reviewed for an abuse of discretion, with a presumption of reasonableness.

"The State bears the burden of establishing beyond a reasonable doubt that the defendant possesses the requisite number of prior felonies to qualify for a particular range." *Id.* at *7 (citing *State v. Jones*, 901 S.W.2d 393, 397 (Tenn. Crim. App. 1995)). Pursuant to Tennessee Code Annotated section 40-35-106(a)(1), to properly sentence Defendant as a Range II multiple offender for his two Class B felony convictions, the State would have to prove beyond a reasonable doubt that Defendant had two but not more than four prior Class D, C, or B felony convictions, or pursuant to section 40-35-106(a)(2), that he had one prior Class A felony conviction. Pursuant to section 40-35-106(a)(1), to properly sentence Defendant as a Range II multiple offender for his Class D felony conviction, the State would have to prove beyond a reasonable doubt that Defendant had two but not more than four prior Class E, D, C, B or A felony convictions.

Tennessee Code Annotated section 40-35-106(b)(5) provides:

Prior convictions include convictions under the laws of any other state, government or country that, if committed in this state, would have constituted an offense cognizable by the laws of this state. In the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, the elements of the offense shall be used by the Tennessee court to determine what classification the offense is given.

Exhibit 1 to the sentencing hearing included a certified copy of a January 18, 1977, Fulton County, Georgia Grand Jury true bill charging Defendant with rape in Case No. A-34238. The true bill states that Defendant "did have carnal knowledge of [victim], a female, forcibly and against her will[.]" *See* Ga. Code Ann. § 26-2001 (1977). At the time of the offense, "Georgia Code Ann[otated] s[ection] 26-2001 permit[ted] a sentence of death, life imprisonment or a term not less than one nor more than twenty years upon conviction for rape." *Maddox v. Seay*, 256 S.E.2d 904, 906 (Ga. 1979). Exhibit 1 to the sentencing hearing also included a certified copy of a "Felony Sentence" document showing that Defendant pled guilty, that the charge was rape, and that Defendant was sentenced to three years. The Felony Sentence document was executed by the Superior Court Judge on August 22, 1977, and entered by the clerk on the same day.

"The original or certified copy of the court record of any prior felony conviction . . . is prima facie evidence that the defendant named in the record is the same defendant before the court, and is prima facie evidence of the facts set out in the record." Tenn. Code Ann. § 40-35-202(a); *see Joseph Cordell Brewer, III,* 2015 WL 4060103, at *7.

The Felony Sentence document provided prima facie evidence for the State to prove that Defendant was convicted of rape in Georgia in 1977. Defendant offered no testimonial or documentary evidence to show otherwise.

At the time Defendant was charged and convicted of rape in Georgia, the offense of rape in this state was codified at Tennessee Code Annotated section 39-3701 (1977), and provided in pertinent part that "[r]ape is the unlawful carnal knowledge of a woman, forcibly and against her will." Although the statutory elements of rape were substantially the same in Georgia as they were in Tennessee, there is no need to conduct an analysis of the elements of the offense because rape was a named offense in both states. *See State v. Vick*, 242 S.W.3d 792, 794 (Tenn. Crim. App. 2007) (recognizing that an elements test is only necessary when the out-of-state conviction does not correspond with a named Tennessee offense).

The current classification of felony offenses was enacted as part of the 1989 Criminal Code. When a Tennessee conviction predates the 1989 Criminal Code, courts must look to the conversion chart of Tennessee Code Annotated section 40-35-118 to determine what felony class to assign to the pre-1989 conviction. The assigned felony class can then be used to determine if the pre-1989 conviction is a qualifying felony for determining range classification. A rape that occurred in Tennessee before the effective date of the 1989 Criminal Code is classified in the conversion chart as a Class B felony. Pursuant to Tennessee Code Annotated section 40-35-106(b)(5) (2017), we determine that the trial court properly found that Defendant's 1977 conviction for rape in Georgia was a qualifying felony for purposes of classifying Defendant as a Range II Offender.

The second conviction on which the State relied was a 1987 conviction from United States District Court of Florida for conspiracy to possess with intent to distribute and to distribute cocaine. The criminal complaint alleged that Defendant did "knowingly, willfully, and intentionally combine, conspire, and confederate to possess with intent to distribute cocaine, a Schedule I controlled substance." The Florida District Court sentenced Defendant to seven years' incarceration. The State argued that the federal statute under which Defendant was convicted was similar to the statute in effect in Tennessee at the time and that it would have been a Class D felony if committed in

Tennessee;[2] Defendant did not contest the trial court's use of this conviction. The 1987 conviction for conspiracy "to possess with intent to distribute and to distribute cocaine" was a qualifying felony for purposes of classifying Defendant as a Range II Offender.

The trial court properly determined that Defendant had the requisite number of qualifying felony convictions to be sentenced as a Range II multiple offender.

*Length of Sentence*

The sentence range for a Range II, multiple offender, convicted of a Class B felony, is not less than twelve nor more than twenty years. *See* Tenn. Code Ann. § 40-35-112(b)(2) (2017). Within-range sentences that are supported by the record and reflect that the trial court properly applied the purposes and principles of sentencing are reviewed for an abuse of discretion, with a presumption of reasonableness. *Bise*, 380 S.W.3d at 707-08.

In the Sentencing Order, the trial court stated that it had

> considered the evidence presented at the trial and the sentencing hearing, the pre-sentence report, the principles of sentencing and arguments made as to sentencing alternatives, the nature and characteristics of the criminal conduct involved, the evidence and information offered by the parties on the mitigating and enhancement factors, any statistical information provided by the administrative office of the Court . . . , any statement the Defendant made, if any, on his own behalf about sentencing, and the Defendant's potential for rehabilitation or treatment.

---

[2] Although the State did not specify the Tennessee statute, the conversion chart of Tennessee Code Annotated section 40-35-118 classifies manufacture, delivery, sale or possession of Schedule II controlled substances pursuant § 39-6-417(a)(1)(B)(repealed) as a Class C felony. Cocaine is a Schedule II controlled substance. The offense and penalties for "manufacture, delivery, sale or possession of Schedule II controlled substances" are now codified at § 39-17-417. Pursuant to Tennessee Code Annotated section § 39-12-107(c), conspiracy is graded one classification lower than the offense which a defendant conspired to commit, except as provided in § 39-17-417(i) and (j). Subsection 417(i)(6) deals with cocaine in the amount of twenty-six grams or more. Because the judgment of the United States District Court of Florida does not state the amount of cocaine Defendant conspired to possess with the intent to distribute, the State's assertion that the offense was a Class D felony is supported by the judgment, even though the complaint alleges the amount of cocaine was four to four and one half ounces. In any event, whether the offense is a Class C or Class D felony is immaterial because both grades are qualifying offenses for the purpose of determining range.

We determine that the trial court properly applied the purposes and principles of sentencing. We will, therefore, review Defendant's within range twenty-year sentence under an abuse of discretion standard with a presumption of reasonableness.

Defendant contends that the trial court wrongly considered "allegations from Georgia for which no evidence was presented of guilt" and an "allegation" that a woman in Coffee County overdosed on drugs sold to her by Defendant to enhance Defendant's sentence to twenty years.[3] Defendant argues that the trial court erred in considering inadmissible evidence to support its finding that Defendant was a dangerous felon and that Defendant had no hesitation about committing a crime when the risk to human life was high.

In its Sentencing Order, the trial court found two enhancement factors provided in Tennessee Code Annotated section 40-35-114 to be applicable in sentencing Defendant: (1) Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and (10) Defendant had no hesitation about committing a crime when the risk to human life was high. Even if the trial court erred in applying an enhancement factor, that misapplication "does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. Enhancement and mitigating factors are advisory only. *See* Tenn. Code Ann. § 40-35-114 (2017); *see also Bise*, 380 S.W.3d at 698 n. 33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008).

The trial court did not wholly depart from the 1989 Act. To the contrary, the trial court properly applied the purposes and principles of sentencing set forth in the 1989 Act. The sentence imposed by the trial court is supported by the record, and Defendant has failed to show that the trial court abused its discretion in imposing the maximum Range II sentence for a Class B felony.

*Pretrial Jail Credits*

Defendant is entitled to pretrial jail credits "for any period of time for which [Defendant] was committed and held in the . . . county jail or workhouse, pending arraignment and trial." Tenn. Code Ann. § 40-23-101 (2017). The judgment of conviction in Count 1 was entered on February 14, 2018, and provided pretrial jail credits for the period from March 22, 2016 to December 19, 2017, the date the sentence was imposed. Defendant's appellate argument, which relates to how many days Defendant

---

[3] The presentence report showed that Defendant had been indicted in Georgia for malice murder, three counts of felony murder, three counts of possession of controlled substance with intent to deliver as the underlying felony for felony murder, criminal attempt to commit rape, and three counts of tampering with evidence.

actually served prior to sentencing, cannot be adjudicated for the first time on appeal without some evidence in the record regarding Defendant's pretrial jail service. Defendant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). The scope of appellate review is limited to the facts established in the record. Tenn. R. App. P. 13(c). "In the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence." *State v. Bibbs*, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing *Smith v. State*, 584 S.W.2d 811, 812 (Tenn. Crim. App. 1979); *Vermilye v. State*, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979)). Relief may be sought in the trial court under Rule 36 Tennessee Rules of Criminal Procedure. *State v. Hopper*, 695 S.W.2d 530, 537 (Tenn. Crim. App. 1985); *State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). Defendant is not entitled to relief in this court on this issue.

*Speedy Trial*

The right to a speedy trial is protected under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. A trial court's determination that Defendant's right to a speedy trial was or was not violated is reviewed under an abuse of discretion standard. *State v. Hudgins*, 188 S.W.3d 663, 667 (Tenn. Crim. App. 2005) (citing *State v. Jefferson*, 938 S.W.2d 1, 14 (Tenn. Crim. App. 1996)); *State v. Easterly*, 77 S.W.3d 226, 236 (Tenn. Crim. App. 2001).

In addressing a motion to dismiss for lack of a speedy trial, trial courts must first determine the length of delay. *State v. Simmons*, 54 S.W.3d 755, 759 (Tenn. 2001). A delay approaching one year will trigger a speedy trial analysis, and the presumption that delay has prejudiced the defendant intensifies over time. *Doggett v. United States*, 505 U.S. 647, 652 (1992); *State v. Utley*, 956 S.W.2d 489, 494 (Tenn. 1997). However, courts take into account the complexity of the case in evaluating the reasonableness of the length of delay. *State v. Wood*, 924 S.W.2d 342, 346 (Tenn. 1996); *Easterly*, 77 S.W.3d at 235. Further, the reason for the delay may justify it, and different reasons are assigned different weight in the balancing analysis. *Barker v. Wingo*, 407 U.S. 514, 531 (1972). Possible reasons for the delay are said to fall within four identifiable categories: (1) intentional delay to gain a tactical advantage over the defense or to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense. *Wood*, 924 S.W.2d at 346-47. The State's deliberate attempt to delay trial to hamper the defense must be weighed heavily against the State. *Barker*, 407 U.S. at 531. However, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* Finally, *Barker* listed three areas in which a defendant could suffer prejudice due to a delay: (1) oppressive pre-trial incarceration; (2) anxiety and concern of the accused; and (3)

impairment of the defense. *Id.* at 532. Of the three, impairment of the defense is the most serious way in which a defendant can be prejudiced. *Id.*

In this case, the trial court properly determined that the delay was presumptively unreasonable and undertook the four-part balancing test set forth in *Barker*. *See State v. Bishop*, 493 S.W.2d 81, 83-85 (Tenn. 1977) (adopting the *Barker* test).

Following the hearing on Defendant's motion to dismiss, the trial court found: (1) that there was "absolutely no showing of any intent by the State to delay this matter to the prejudice of Defendant or for any tactical advantage," (2) that "most of the delay . . . was acquiesced to by [Defendant] or was a result of waiting on the defense to amend . . . their motions to suppress," and (3) that the State "was very diligent in communicating with defense counsel in trying to get those motions in a position where they could be heard." For the reasons below, we determine that these three findings were fully supported by the record.

Defendant was indicted in March 2015, but he failed to appear for arraignment and was rearrested on May 11, 2015. Although Defendant was denied bond, he was mistakenly released from custody, and he was not apprehended until August 8, 2015, when Defendant was arrested on new charges. This five- to six-month delay was caused entirely by Defendant.

In January 2016, Defendant's retained counsel filed several pretrial motions. The State promptly responded to the motions on February 8. After numerous discussions with the State, retained counsel filed amended motions on February 23, 2016, and the parties agreed to a special setting. On May 27, 2016, Defendant filed additional motions. The parties agreed to argue the motions on July 14, 2016. Defendant acquiesced in this delay so that he could get his motions ready for argument.

On July 20, 2016, retained counsel moved to withdraw. New counsel entered an appearance on September 7, 2016, and filed a motion to reduce bond and a "Motion for a Fast and Speedy Trial" on September 13, 2016. This delay was the result of Defendant's changing trial counsel and new counsel having to become familiar with the case so that he could prepare and file appropriate motions.

The State elected to try Case No. 42,456F, not this case, on April 5, 2017. It is not the State's fault that Defendant had several other cases pending. The State was not at fault in this delay.

On September 25, 2017, Defendant moved to sever his offenses in the instant case, alleging that there were two separate incidents. On September 27, 2017, Defendant filed

another motion to dismiss for failure to grant a speedy trial. The reason for the delay from April 5, 2017, to September 25, 2017, is not known. However, Defendant obviously had not completed filing pretrial motions on September 25.

The case was tried by jury on October 17, 2017.

We determine that the trial court did not abuse its discretion in denying Defendant's motion to dismiss for failure to grant a speedy trial.

## Conclusion

For the aforementioned reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 14 -