IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 6, 2006

## STATE OF TENNESSEE v. MICHAEL ANTHONY LEWIS

**Appeal from the Criminal Court for Davidson County**
**No. 2001-D-2182     Seth Norman, Judge**

—————————

**No. M2005-02279-CCA-R3-CD - Filed September 26, 2006**

—————————

Following a jury trial, the Defendant, Michael Anthony Lewis, was convicted of attempted first degree murder. He was sentenced as a career offender to sixty years in the Department of Correction (DOC). On appeal, the Defendant argues that (1) the trial court improperly denied his motion to dismiss for lack of a speedy trial, (2) the evidence was insufficient to support his conviction, (3) the trial court improperly sentenced the Defendant as a career offender, and (4) the trial court committed plain error by admitting a photograph that the State did not produce in response to a defense discovery request. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which J.C. MCLIN, J., joined. GARY R. WADE, P.J., not participating.

Dwight Scott, Nashville, Tennessee, for the appellant, Michael Anthony Lewis.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The Defendant was indicted for attempted first degree murder for shooting and seriously wounding a police officer. He was subsequently tried and convicted. The Defendant now appeals, raising four issues: (1) whether the trial court erred in denying the Defendant's motion to dismiss for lack of a speedy trial; (2) whether the evidence was sufficient to support a conviction for attempted first degree murder; (3) whether the trial court erred in sentencing the Defendant as a career offender; and (4) whether the State's failure to produce a photograph requested under Rule

16 of the Tennessee Rules of Criminal Procedure should be reviewed as plain error. We conclude that none of these issues merit reversal.

## Factual Background

On June 14, 2001, Officer Wesley Charles Tilley ("the victim") of the Metropolitan Nashville Police Department attempted to pull over a vehicle with expired license tags and broken tail lights. The victim saw three occupants in this vehicle, which were later identified as the Defendant, Mr. Eric Hazlitt, and Mr. Steve Radley. When the victim activated his emergency equipment, the suspects' vehicle accelerated to a high rate of speed. During the pursuit, the Defendant instructed the driver not to stop because he did not want to go back to prison. The driver obeyed the Defendant's orders, and the victim continued pursuing the vehicle for approximately two miles. The driver attempted to pull over twice, but the Defendant continued to instruct him not to do so. Eventually, the Defendant told the driver to pull over, and the driver drove the car into the side of a building and stopped. The three occupants exited the vehicle. They all ran in different directions, and the victim pursued the Defendant on foot. At one point during this foot pursuit, the victim and the Defendant passed under a street lamp, and the Defendant turned around, giving the victim a clear view of the Defendant from approximately eight feet away.

As the foot pursuit continued, the Defendant ran to the top of a hill and dropped to his stomach in a prone position. As the victim ran up the hill, the Defendant opened fire upon the victim from only five or six feet away. The victim was shot five times — twice in the chest, twice in the arm, and once in the back as he was trying to retreat. Although the victim's protective vest stopped three of the bullets from penetrating his torso, he sustained serious wounds from all five bullets, including a bullet that went entirely through his upper left arm. Immediately after the shooting, the Defendant lost one of his shoes and his eyeglasses and dropped his weapon. The victim attempted to continue pursuing the Defendant but was unable to do so due to his injuries.

When investigating officers arrived on the scene, the victim provided them with a description of the suspect, the location of the shooting, and the suspect's direction of flight. Officers used canine units and were able to find the missing shoe, a gun, spent shell casings, and blood. As the officers and the canine units continued to search the area, they found the Defendant hiding underneath a stairwell. Although the Defendant refused to surrender, the officers managed to apprehend and arrest him.

## Procedural Background

The Defendant was subsequently indicted for attempted first degree murder on November 2, 2001. On December 9, 2004, the Defendant sent a motion to dismiss for failure to bring him to trial expeditiously to the Assistant District Attorney, the Attorney General, and the Chief Justice of the Tennessee Supreme Court. His attorney also filed a motion to dismiss for the lack of a speedy trial on February 8, 2005. At the hearing on the motion to dismiss, the Defendant testified that his defense suffered prejudice because two potential defense witnesses — Mr. and Mrs. Keith Covington — were now deceased as a result of a murder-suicide. The Defendant contended that these witnesses were present when the Defendant got into the vehicle with the two other occupants, Mr. Hazlitt and

Mr. Radley. The Defendant further contends that Mr. and Mrs. Covington would have testified that the Defendant did not have a gun on his person, but that Mr. Hazlitt and Mr. Radley were both armed. On cross-examination, the Defendant admitted that Mr. and Mrs Covington were not passengers in the vehicle, were not present at the time and place of the shooting, and would have had no way of knowing for certain whether the Defendant was armed when he entered the vehicle. The trial court denied the motion to dismiss for lack of a speedy trial on February 25, 2005. The Defendant's trial began on February 28, 2005, and concluded on March 1, 2005.

A jury convicted the Defendant, and he was sentenced as a career offender to sixty years in the Department of Correction at sixty percent. See Tenn. Code Ann. § 40-35-108(a)(2). The trial court ordered this sentence to run consecutive to a prior sentence because he was a "professional criminal" with an "extensive" criminal record. See Tenn. Code Ann. § 40-35-115(b)(1)-(2).

## ANALYSIS
### I. SPEEDY TRIAL

The Defendant contends that the trial court erred by denying his motion to dismiss for lack of a speedy trial. We conclude that the trial court did not err in denying the Defendant's motion because the reasons for the trial delay were neutral, the Defendant agreed to or requested all of the continuances, the Defendant's demand for a speedy trial was negated by his subsequent requests for continuances, and the Defendant did not suffer actual prejudice from the delays.

In Barker v. Wingo, 407 U.S. 514 (1972), the United States Supreme Court developed a four-prong balancing test to determine when the Defendant has been deprived of his right to a speedy trial: (1) the length of the delay; (2) the reasons for the delay; (3) the Defendant's assertion of his right; and (4) the prejudice to the Defendant. Id. at 530; see also State v. Bishop, 493 S.W.2d 81, 83 (Tenn. 1973). The "triggering mechanism" for a speedy trial violation is an excessive delay in bringing the Defendant to trial. Barker, 407 U.S. at 530. Although "[t]he nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted," id. at 527, a delay of more than three years is sufficient to require further inquiry. See Eric B. Blakemore v. State, No. W2004-01578-CCA-R3-PC, 2005 WL 2205848, at *5 (Tenn. Crim. App., Jackson, Sept. 21, 2005), perm. to appeal denied, (Tenn. Jan 30, 2006).

Once a constitutionally suspicious delay is established, the remaining three factors of the Barker analysis must be considered, along with any other "peculiar circumstances of the case." Barker, 407 U.S. at 530-31. The reasons for the delay should be "neutral," and the State should not make a "deliberate attempt to delay the trial in order to hamper the defense." Id. at 531. The reasons for the delay usually fall into one of four categories, listed in order of severity: "(1) intentional delay for tactical advantage or to harass the accused, (2) bureaucratic indifference or negligence, (3) necessary delay for fair and effective prosecution, and (4) delay in which the defense has been complicit." State v. Wood, 924 S.W.2d 342, 346-47 (Tenn. 1996).

The Defendant's assertion of the right, while not required, is "entitled to strong evidentiary weight" in the analysis, particularly since prolonged delays may benefit the Defendant. Barker, 407 U.S. at 521, 531-32. A Defendant's letter sent to opposing counsel is sufficient to constitute an assertion of the right to speedy trial. State v. Monty Earl Picklesimer, No. M2003-03087-CCA-R3-CD, 2004 WL 2683743, at *1 (Tenn. Crim. App., Nashville, Nov. 24, 2004). Even a vague request for a more timely trial that does not explicitly mention the Sixth Amendment guarantee or the desire for a speedy trial is sufficient to be considered an assertion of the right. State v. Easterly, 77 S.W.3d 226, 237 (Tenn. Crim. App. 2001). However, defense requests for continuances after a speedy trial has been requested "diminish the weight to be accorded this factor." State v. Hugh Peter Bondurant, Jr., No. M1998-00494CCA-R10CD, 1999 WL 1209514, at *6 (Tenn. Crim. App., Nashville, Dec. 17, 1999).

The prejudice to the Defendant "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." Barker, 407 U.S. at 532. These interests include preventing "oppressive pretrial incarceration," minimizing "anxiety and concern of the accused," and limiting "the possibility that the defense will be impaired." Id. A delay that prevents a Defendant from serving at least a portion of his sentences concurrently may also demonstrate prejudice. Smith v. Hooey, 393 U.S. 374, 378 (1969). If the State's delay was caused by "inevitable and wholly justifiable" reasons, the Defendant must prove "specific prejudice to his defense" for this factor to weigh in his favor. Doggett v. United States, 505 U.S. 647, 656 (1992). However, if the State's delay was intentional or negligent, prejudice is presumed. Id. at 657.

In reviewing a trial court's ruling on whether the Defendant was denied his right to a speedy trial, this Court applies an abuse of discretion standard of review. State v. Jefferson, 938 S.W.2d 1,14 (Tenn. Crim. App. 1996). An abuse of discretion exists only "if the record contains no substantial evidence to support" the decision. State v. Yvonne B. Ragland, No. E2005-02016-CCA-R3-CD, 2006 WL 2354769, at *1 (Tenn. Crim. App., Knoxville, Aug. 14, 2006).

In this case, the delay between the indictment and the trial was approximately thirty-nine months, which triggers the four-prong Barker analysis. The reasons for the delay, which included four continuances requested by the State and two continuances by the defense, are neutral and show no effort on the part of the State to disadvantage the defense. Because the Defendant agreed to the State's continuances, the Defendant is considered to be "complicit" in the delays. Wood, 924 S.W.2d at 347. Thus, the reasons for the delay are not constitutionally problematic, and this factor weighs in favor of the State.

Next, the Barker analysis considers whether the Defendant asserted his right to a speedy trial. The Defendant did assert his right to a speedy trial in December 2004 by mailing a motion to the Assistant District Attorney requesting that the indictment be dismissed under Tennessee Rule of Criminal Procedure 48 and Tennessee Code Annotated section 40-14-101 for "unnecessary delay in bringing the Defendant to trial." Although this letter did not explicitly mention his Sixth Amendment right to a speedy trial, the request to expedite the proceedings was sufficient under Easterly to put the Assistant District Attorney on notice that the Defendant wanted to assert his Sixth

Amendment guarantee. However, because the only requests for continuances after the Defendant's assertion of the speedy trial right were made by the defense, the Defendant's assertion was negated by these continuances.

This Court has considered a similar situation in the case of State v. Bondurant, 1999 WL 1209514, at *6. In Bondurant, the Defendant asserted his Sixth Amendment right by personally mailing a letter to the clerk of court demanding a speedy trial. Id. at *6. After this assertion, the defense counsel made several requests for continuances, including one request due to illness of defense counsel. Id. This Court in Bondurant held that "motions for continuances diminish the weight to be accorded" the Defendant's assertion of the right to speedy trial. Id. As such, the Court found that the balance weighed in favor of the State even though the defendant in that case had asserted his speedy trial right. In the present case, the Defendant's assertion of his Sixth Amendment right is negated under Bondurant because the only requests for continuances after the Defendant's assertion were made by the defense for illness of defense counsel and for the preparation of new counsel in the wake of the defense counsel's medical leave. Thus, this factor weighs in favor of the State.

Finally, the Defendant has not demonstrated actual prejudice. The Defendant's two allegations of prejudice are that (1) he could have served concurrent sentences if his trial had been more timely, and (2) he could have presented testimony from two witnesses who died before his trial occurred. Regarding the sentencing, the Defendant was not eligible for concurrent sentencing regardless of when his trial was held. Under Rule 32 of the Tennessee Rules of Criminal Procedure, a court must impose consecutive sentences "for a felony committed while on parole for a felony." Tenn. R. Crim. P. 32(c)(3)(A). The Defendant did commit this offense while on parole for a prior felony, and thus the Defendant's sentences were mandatorily consecutive. Further, the trial court properly found that consecutive sentencing is required because this Defendant is a "professional criminal who has knowingly devoted [his] life to criminal acts as a major source of livelihood" and has an "extensive" criminal record. Tenn. Code Ann. § 40-35-115(b)(1)-(2). Therefore, the Defendant cannot show prejudice from losing his right to pursue concurrent sentencing.

Regarding the Defendant's claim that two witnesses were unable to testify because of the delay in bringing him to trial, the Defendant has not demonstrated any actual prejudice from the lack of their testimony. These witnesses were not present at the scene of the crime, and these witnesses did not know for certain that the Defendant did not have a weapon on his person when he entered the car. Further, these witnesses may have actually harmed the Defendant's case if they had testified. These witnesses placed the Defendant in the car that the victim attempted to pull over. These witnesses also would be able to testify that there were weapons in the car that any of the individuals were able to use. Thus, the Defendant has not demonstrated actual prejudice exists due to his inability to call these deceased witnesses.

Relying on Doggett, 505 U.S. 647 (1992), the Defendant asserts that prejudice should be presumed in this case. However, the record does not reflect that negligence on the part of the State caused the delay in bringing the Defendant to trial. On the contrary, two of the State's continuance

requests were for an unavailable witness and for an attempt to continue plea negotiations with the Defendant. As the Doggett court explicitly recognizes, "pretrial delay is often both inevitable and wholly justifiable." Id. at 656. One such reason for acceptable delay is for the State to have witnesses available. Id. This was precisely the situation in this case. The only other State request for a continuance appears to be so that the State could try another unrelated matter, yet there is no allegation of an attempt to hamper this Defendant by such a decision nor is there any evidence of negligence raising this case to the level of presumed prejudice. Therefore, because this Defendant did not demonstrate actual prejudice, this factor of the Barker analysis also weighs in favor of the State.

While the delay was sufficient to trigger a Barker inquiry, the Defendant did not establish a meritorious claim for a Sixth Amendment violation. Accordingly, we conclude that trial court did not abuse its discretion by denying the Defendant's motion to dismiss for lack of speedy trial.

## II. SUFFICIENCY OF EVIDENCE
Next, the Defendant contends that the State's evidence is insufficient to support his conviction for attempted first degree murder beyond a reasonable doubt. We conclude that the evidence was sufficient.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e) A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

In this case, the State produced sufficient evidence for a rational jury to find the Defendant guilty of attempted first degree murder. Under Tennessee Code Annotated section 39-13-202(a)(1), first degree murder is the premeditated and intentional killing of another person. A premeditated killing is one "done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d). To be premeditated, the intent to kill must have been formed before the act itself, and the accused must be sufficiently free from excitement and passion. Id. Whether premeditation is present is a question of fact for the jury, and it may be determined from the circumstances surrounding the offense. Bland, 958 S.W.2d at 660; State v. Anderson, 835 S.W.2d 600, 605 (Tenn. Crim. App. 1992). A jury may infer premeditation from such actions as "the use of a deadly weapon upon an unarmed victim," Bland, 958 S.W.2d at 660, and from "evidence concerning the defendant's motive, and the nature of the killing," State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). An intentional act requires that the person have the desire to engage in the conduct. See id. § 39-11-106(a)(18).

Under Tennessee Code Annotated section 39-12-101(a)(2)-(3), a person "commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part."

The victim identified the Defendant as the shooter at trial, noting that he was only five or six feet from the Defendant in an amply lit area during his pursuit. Along with the eyewitness identification, Mr. Hazlitt, the individual who was driving the vehicle that the victim pursued, said that the Defendant and the victim were the only two people in that area at the time of the shooting and that the Defendant had a gun on his person while in the car. Additionally, the State showed that the Defendant's missing shoe and eyeglasses were found in close proximity to the place where the victim was shot, which corroborated the victim's statements. The victim testified that the Defendant discarded a .38 caliber revolver immediately after the shooting, and this weapon was found in the same area along with five spent shell casings. Finally, the Defendant was found hiding under a staircase in the vicinity of the shooting immediately following the shooting. The Defendant refused to surrender to authorities until a police dog removed the Defendant from his hiding place. Once apprehended, the Defendant was missing both the shoe and eyeglasses that matched those found by the location of the shooting. Thus, the State presented sufficient evidence for a rational jury to find that the Defendant committed the shooting.

Once the State has shown that the Defendant was properly identified as the shooter, the State must still prove that the Defendant did act with premeditation and the intent to kill. With regard to intent, the State presented evidence that the Defendant shot at the victim five times from only a few feet away while the victim did not have his weapon drawn. The bullets struck the victim in the chest, the back, and in the arm. This evidence is sufficient for a rational jury to determine that the Defendant acted with the intent to kill by shooting the victim multiple times from such close range.

With regard to premeditation, the State's evidence shows that the victim was chasing the Defendant, that the Defendant ran to the top of a hill ahead of the victim, and that the Defendant laid

down on his stomach and got in a position to ambush the victim as he pursued the Defendant up the hill. Further, the State presented evidence that the Defendant stated during the earlier police chase that he wanted to get away and did not want to go back to jail, thus providing motive evidence that supports a finding of premeditation. Finally, the additional fact that the victim did not have his weapon drawn at this time further demonstrates the element of premeditation. Accordingly, this Court concludes that the State produced sufficient evidence for a rational trier of fact to find the Defendant guilty of attempted first degree murder beyond a reasonable doubt.

### III. CAREER OFFENDER SENTENCING

The Defendant asserts that the trial court improperly considered the Defendant's prior convictions for sentencing purposes. Specifically, he argues that he should not have been sentenced as a career offender.[1] This Court concludes that the trial court properly sentenced the Defendant as a career offender because he had four previous Class A or B felony convictions, because he was presently convicted of a Class A felony, and because the twenty-four hour merger rule does not operate to merge any of the Defendant's prior convictions.

A defendant is classified as a career offender if he meets two conditions: (1) the defendant has at least four Class A or Class B felony convictions; and (2) the defendant's present conviction is for a Class A or B felony. Tenn. Code Ann. § 40-35-108(a)(2). In calculating the number of prior felonies, the twenty-four-hour merger rule requires that "multiple felonies committed as part of a single course of conduct within twenty-four (24) hours constitute one (1) conviction for the purpose of determining prior convictions; however acts resulting in bodily injury to the victim shall not be construed to be a single course of conduct." Tenn. Code Ann. § 40-35-108(b)(4).[2] If the final calculation of the Defendant's prior felony convictions classifies him as a career offender, the Defendant "shall receive the maximum sentence within the applicable Range III." Tenn. Code Ann. § 40-35-108(c).

The designation of a defendant as a career offender may be appealed by either party. Tenn. Code Ann. § 40-35-108(d). This Court must review a defendant's appeal to the length of sentence de novo "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This Court will uphold the trial court's sentence "as long as (1) it complies with the purposes and principles of the 1989 Sentencing Act, and (2) its findings are adequately supported by the record." State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

---

[1] The Defendant's brief specifically requests this Court to consider whether the trial court erred in sentencing the Defendant as a persistent, Range III offender. However, the judgment form clearly shows that the Defendant was actually sentenced as a career, Range III offender. This Court will address whether the Defendant's sentence was properly imposed under the career, Range III offender provisions.

[2] The offenses herein, as well as the Defendant's trial and sentencing, occurred prior to June 7, 2005, which was the effective date of the 2005 amendments to Tennessee Code Annotated section 40-35-108. See 2005 Tenn. Public Acts ch. 353, § 22.

According to the pre-sentence report, the Defendant has a total of four prior Class A or B felonies. Further, the Defendant's present conviction for attempted first degree murder is a Class A felony. Thus, the sole question for review is whether the application of the twenty-four-hour merger rule operates to merge convictions of facilitation of felony murder and attempted especially aggravated robbery. We conclude that it does not.

The two convictions that the Defendant alleges should be merged did occur within the same twenty-four-hour period. However, the Defendant asserts that convictions for facilitation and attempt should not be considered as "acts resulting in bodily injury to the victim." The Defendant bases this assertion on the fact that neither facilitation nor attempt make the Defendant criminally responsible for the offense. For these reasons, the Defendant alleges that the merger rule should apply to these convictions, placing the Defendant outside of the ambit of the career offender category.

While the Defendant correctly states that facilitation includes a lesser degree of culpability than the principal offense and that attempt is an inchoate offense distinct from the complete offense, these distinctions are irrelevant under the career offender sentencing scheme. Instead, the proper inquiry is whether the Defendant's prior convictions resulted in "bodily injury to the victim." Tenn. Code Ann. § 40-35-108(b)(4). Without any doubt, the Defendant's prior convictions satisfy this exception to the merger rule.

The record on appeal for the Defendant's convictions for facilitation of felony murder and attempted especially aggravated robbery shows that, "[i]n the light most favorable to the State, the Defendant drove [the shooter] to the place where the victim was, provided him with a gun, waited on him, and then drove him away from the scene of the crime." State v. Lewis, 919 S.W.2d 62, 66 (Tenn. Crim. App. 1995). The victim died as a result of the gunshot wounds. Id. at 64. Therefore, the Defendant clearly acted in a manner that resulted in injury to the victim, and the exception to the merger rule is met.

This Court concludes that the merger rule should not apply to merge these offenses because both convictions were for "acts resulting in bodily injury to the victim" committed within the requisite twenty-four-hour period. The trial court did not err in sentencing the Defendant to the maximum allowable as a Range III career offender.

## IV. RULE 16 DISCOVERY

Finally, the Defendant contends that the State committed plain error by failing to produce a photograph requested under Rule 16 of the Tennessee Rules of Criminal Procedure. No contemporaneous objection to the introduction of the photograph into evidence was made at trial. We conclude that plain error has not been shown.

Under Rule 16(a)(1)(F) of the Tennessee Rules of Criminal Procedure, "[u]pon request of the defendant, the state shall permit the defendant to inspect and copy . . . photographs . . . which are

within the possession, custody or control of the state, and which are material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial." Tenn. R. Crim. P. 16(a)(1)(F). Under Rule 52 of the Tennessee Rules of Criminal Procedure, "[a]n error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." Tenn. R. Crim. P. 52(b).

This Court has established a five-factor test to determine if an error constitutes plain error: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to due substantial justice." State v. Adkisson, 899 S.W.2d 626. 641-42 (Tenn. Crim. App. 1994). In order for an error to be serious enough to affect substantial rights, the error must have affected the outcome of the trial. United States v. Olano, 507 U.S. 725, 732-37 (1993). The admission of the photograph into evidence does not rise to the level of plain error.

In this case, the Defendant was shown the photograph before it was introduced and did not make a contemporaneous objection. Further, the Defendant did not allege this violation in his motion for a new trial. Therefore, this Court may review the error only if it is so substantial that the Defendant's right to a fair trial was prejudiced by the violation. The Defendant alleges that plain error exists because the photograph was used to prove that he was apprehended and arrested without one of his shoes. Although this photograph may have been a visual addition to the proof at trial, the record clearly shows that the State had elicited substantial testimony regarding the shoes. First, the officer who apprehended the Defendant had already testified that he had been arrested while missing a shoe. Second, the State had already shown that the shoe that was found near the scene of the shooting matched the shoe that the Defendant was wearing when apprehended. Thus, the jury already was aware of the match of the shoes before the photograph was introduced; in fact, had the photograph never been introduced, the jury would have received virtually the same information.

The Defendant further asserts that the trial court should have excluded the photograph from evidence because of the State's failure to produce the photograph before trial. Although Rule 16(d)(2) does provide that the court may "prohibit the party from introducing evidence not disclosed," Tenn. R. Crim. P. 16(d)(2), this Court has held that excluding evidence for a Rule 16 violation is a "drastic remedy and should not be implemented unless there is no other reasonable alternative." State v. Smith, 926 S.W.2d 267, 270 (Tenn. Crim. App. 1995). The evidence should not be excluded unless the Defendant was prejudiced by the discovery violation itself. Id.; see also State v. Cottrell, 868 S.W.2d 673, 677 (Tenn. Crim. App. 1992). Because the Defendant was already aware that the State arrested the Defendant without a shoe, the Defendant was not prejudiced by the State's failure to produce this photograph during pre-trial discovery. By failing to object, the Defendant waived any objection to the admission of the photograph. We conclude that any discovery violation by the State does not rise to the level of plain error.

## CONCLUSION

Based on the foregoing authorities and reasoning, this Court affirms the judgment of the trial court.

_____

DAVID H. WELLES, JUDGE