# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 12, 2014 Session

## STATE OF TENNESSEE v. CYNTHIA GAIL HARVEY

**Appeal from the Circuit Court for Humphreys County**
**No. 11430     George C. Sexton, Judge**

---

**No. M2013-02391-CCA-R3-CD - Filed October 21, 2014**

---

The Defendant, Cynthia Gail Harvey, appeals from her Humphreys County jury conviction for felony theft, (1) challenging the trial court's denial of her motion to dismiss for lack of a speedy trial and (2) contending that she received ineffective assistance of counsel at trial. Upon considering the relevant authorities and the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Olin J. Baker, Charlotte, Tennessee, for the appellant, Cynthia Gail Harvey.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Dan M. Alsobrooks, District Attorney General; and Craig Monsue, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
## FACTUAL BACKGROUND

The Defendant was indicted on August 6, 2007, for theft of property valued at $10,000 or more, a Class C felony. The indictment alleged that the offense at issue occurred between January 21, 2005, and June 2, 2006. The Defendant then filed a motion to dismiss for failure to conduct a speedy trial on September 21, 2012. That motion was denied, and a trial was held on October 11, 2012. The following evidence was presented at the Defendant's trial.

Michael Scott Patton, the victim, testified that he owned Waverly Discount Tobacco store where he employed the Defendant. Mr. Patton explained that the Defendant had worked for him for a number of years, that she had keys to the store, and that he trusted her. Mr. Patton further explained that the Defendant "most always" worked on Fridays, that she primarily waited on customers, that she both opened and closed the store, and that she always worked alone. Mr. Patton testified that he contacted the Waverly Police Department (WPD) on June 2, 2006, after discovering that the Defendant had been stealing money from the cash register. This discovery was made several days prior when Mr. Patton, during his routine accounting, noticed that the cash register had too many "Z" reports. Mr. Patton explained that there were two reports that could be requested from the cash register, an "X" or "Z" report. He further explained that the "X" report reflected the daily profits in the cash register over $300, which was the amount that should always remain in the register at the end of the day to provide change for customers; an "X" report could be requested at any time until a "Z" report was conducted. Mr. Patton explained that the "Z" report "zeros out" the grand total of sales, returning it to zero, and that there should be one "Z" report printed per day. He further explained that each "Z" report had a corresponding number, and that after he noticed an extra "Z" report, he began looking at the reports more closely and discovered that some of the "Z" report numbers were missing and that this seemed to occur only on Fridays. Mr. Patton further testified that a "Z" report could be run accidentally but that the clerks would usually call and tell him such because they knew doing so was a "bad mistake." However, he did explain that you would have to turn the key from "X" to "Z" before running a "Z" report.

Because the Defendant worked on Fridays, he began watching her. Mr. Patton saw the Defendant run a report one morning and then take money out of the register to get the total close to $300. He allowed her to do it a few more times to get it on the surveillance video and then confronted her on June 2, 2012. The Defendant denied any wrongdoing, and Mr. Patton informed her that he was calling the police. Mr. Patton testified that, after examining his finances and reports, he discovered that the Defendant had been stealing money from the cash register since January 21, 2004, and that she had stolen over $10,000.

On cross-examination, Mr. Patton admitted that machines could make mistakes but insisted that he never had one of his cash registers make a mistake. He also admitted that the Defendant sometimes worked half of a day, that he had not inspected the cash register for defects, and that employees sometimes removed large bills or large sums of money from the register for safety reasons.

Devin Elliott, an officer with WPD, testified that he assisted Officer Greg Triplett with the call regarding a theft at Waverly Discount Tobacco and that Officer Triplett did most of the talking and investigating. Officer Elliott also testified that the Defendant

voluntarily went to the WPD with him and Officer Triplett and that she was not under arrest at that time. Officer Triplett conducted a short interview of the Defendant, and he observed. The Defendant became ill at some point and was taken to the hospital. He admitted that he did not take any notes, that he consulted the case file for trial purposes, and that the information would have been difficult to remember if he had not viewed the case file prior to trial.

Officer Triplett testified that he was dispatched to Waverly Discount Tobacco regarding an employee theft. He spoke with Mr. Patton, took notes, talked to the Defendant, and asked if she would accompany them to WPD. She complied. Officer Triplett interviewed the Defendant, which was recorded, but the interview was cut short because the Defendant had a medical issue. On cross-examination, he agreed that the Defendant was taken to the hospital after a short interview and that he was ultimately informed that she had a coronary seizure.

The State rested its case, and the Defendant made a motion for judgment of acquittal, which the trial court denied. After a brief conference with the Defendant, trial counsel informed the trial court that the Defendant did not want to testify and stood on her motion. After brief deliberations, the jury convicted the Defendant as charged. A sentencing hearing was scheduled, but prior to the commencement of the hearing, the parties reached an agreement in which the Defendant would be placed on supervised probation for three years. Judicial diversion was granted by the trial court.

The Defendant later filed a motion for a new trial, alleging that the trial court erred in denying her motion to dismiss for failure to conduct a speedy trial and that trial counsel was ineffective. The hearing was held on October 15, 2013. The Defendant and her daughter, who also worked at Waverly Discount Tobacco, testified, but although subpoenaed, trial counsel was not present for this hearing. The following relevant evidence was presented at that hearing.

Angie Stewart, the Defendant's daughter, testified that she worked for Mr. Patton and periodically worked at the Waverly Discount Tobacco store during the indictment period. She further testified that Joan Corlew and Mary Watkins also worked there but that both women died prior to trial. Ms. Stewart testified that she was with the Defendant when the Defendant hired trial counsel. During that meeting, he asked Ms. Stewart about the "policies and procedures and counting down and zeroing the register" at Waverly, but he never subpoenaed her to testify at trial. She explained that she could have refuted Mr. Patton's testimony about the use of the "X" and "Z" reports and the countdown process. Ms. Stewart also testified that a clerk would sometimes utilize those functions to check the money in the cash register, especially if the prior clerk was not trustworthy.

The Defendant testified that she hired trial counsel in 2007 after her indictment. Trial counsel did not take any notes during their interview, and she only spent about fifteen to twenty minutes in trial counsel's office that day. She hired trial counsel anyway because he had a reputation for being a good attorney. The Defendant testified that she did not meet with trial counsel again until just before the October 11, 2012 trial and that they met a total of two times throughout the representation. She stated that trial counsel would call her periodically to tell her "not to worry" and to let her know about trial dates that had been continued but that she was never consulted about nor gave her consent to these continuances. The Defendant testified that trial counsel never discussed her charges, exposure, nor right to testify, prior to trial. Trial counsel only discussed the Defendant's right to testify with her when they went to the judge's chambers during trial. The Defendant insisted that she wanted to testify at trial and that she suggested to trial counsel that he call both herself and her daughter, Ms. Stewart, as witnesses to refute Mr. Patton's "lies." She stated that trial counsel told her that he had years of experience and that she should not testify. The Defendant admitted that the trial court explained her right to testify and that she signed the waiver of rights form, stating that she was waiving her right to testify voluntarily, but she insisted that she signed it because her attorney told her to do so.

The trial court denied the motion for a new trial, finding as follows:

> 1. The Court heard proof presented at trial and finds it to be sufficient. Defendant's assertion that the verdict is against the weight of the evidence is overruled;
>
> 2. Prior to trial, the Court ruled that the Defendant's right to a speedy trial was not infringed. The Defendant did not make a demand for a speedy trial until September 20, 2012. A great deal of this delay was on the part of the Defendant. Defendant's assertion that the Court erred in denying the Defendant's motion to dismiss for lack of a speedy trial is overruled; and
>
> 3. The Court observed [trial counsel]'s performance as counsel for Defendant during the trial. [Trial counsel]'s performance was effective. Defendant's assertion that she did not receive effective assistance of counsel is overruled.

The Defendant filed a timely notice of appeal.

## ANALYSIS

The Defendant contends that the trial court erred in denying her motion to dismiss for

lack of a speedy trial and that she received ineffective assistance of counsel at trial. The State responds that the Defendant failed to prove her allegations and that the trial court properly denied the relief requested. We will delve into each argument in turn.

### *Denial of Speedy Trial Motion to Dismiss*

The Defendant contends that the trial court erred in denying her motion to dismiss for lack of a speedy trial, explaining that the State's over five-year delay in bringing her case to trial after her indictment severely limited her ability to defend herself because two potential witnesses had died and others were hard to locate at the time of trial. The State responds that the Defendant failed to assert her right to a speedy trial, and when such right was asserted, her trial commenced shortly thereafter. Further, the Defendant failed to demonstrate what the testimony of the now-deceased witnesses would have been and how such testimony would have been favorable to her case, thus, failing to show prejudice. We agree with the State.

Upon the State's initiation of criminal proceedings, the right to a speedy trial is protected under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. This right is statutory, as well, in Tennessee. Tenn. Code Ann. § 40-14-101. A trial court must carefully balance societal interest in punishing criminals against a defendant's interest in a speedy trial because dismissal of charges is the only available remedy for violation of the right. State v. Bishop, 493 S.W.2d 81, 83 (Tenn. 1973). In Bishop, our Supreme Court adopted factors articulated by the United States Supreme Court as the relevant analytical framework for alleged violations of the right to a speedy trial:

> (1) The length of the delay;
> (2) the reason for that delay;
> (3) the defendant's assertion to his right to speedy trial; and
> (4) the prejudice to the defendant.

Id. at 83-84 (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). The question of whether the right to a speedy trial has been denied is a mixed question of law and fact and, therefore, subject to de novo review. State v. Rickey E. Hutchings, No. M2008-00814-CCA-R3-CD, 2009 WL 1676057, at *5 (Tenn. Crim. App. June 16, 2009) (citing State v. Hawk, 170 S.W.3d 547, 549 (Tenn. 2005)).

We apply the above-listed factors in the instant case. The first Barker factor, length of delay, is a threshold factor, serving as the triggering mechanism "that will necessitate the consideration of the other three factors." State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996).

Until the accused establishes a period of delay that is "presumptively prejudicial," there will be "no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530; see also State v. Easterly, 77 S.W.3d 226, 235-36 (Tenn. Crim. App. 2001). Generally, "a delay must approach one year to trigger the Barker v. Wingo analysis," although "the line of demarcation depends on the nature of the case." State v. Utley, 956 S.W.2d 489, 494 (Tenn. 1997); see Doggett v. United States, 505 U.S. 647, 652 n.1 (1992). The five-year delay between the Defendant's indictment and trial requires inquiry into all of the Barker factors.

The second factor, the reason for delay, falls into one of four categories: "(1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense." Wood, 924 S.W.2d at 346-47 (footnotes omitted). The record reflects that the Defendant suffered a coronary seizure shortly after being questioned regarding the instant offenses and had to be hospitalized. It also reflects that the State requested at least one continuance due to the unavailability of a witness, to which the Defendant agreed. Further, in overruling the Defendant's motion for a new trial, the trial court found that "[a] great deal of the delay was on the part of the Defendant." Although the court docket shows multiple continuances in the instant case, it is unclear who requested them. Therefore, because the Defendant at least acquiesced in this delay, this factor is neutral.

The third factor, the Defendant's assertion of the right to a speedy trial, is given great weight in the determination of whether the right was denied. Barker, 407 U.S. at 531-32. "Failure to assert the right implies a defendant does not actively seek a swift trial." Wood, 924 S.W.2d at 347. In the instant case, the Defendant did not assert her right until over five years after her indictment, and her trial was conducted shortly thereafter. Further, the Defendant admits that she never spoke with trial counsel about filing a speedy trial motion and was unaware that he had done so. Thus, this factor does not weigh in her favor.

The final factor, prejudice, is considered the "most important factor in the [speedy trial] analysis." State v. Simmons, 54 S.W.3d 755, 760 (Tenn. 2001). "Courts do not necessarily require a defendant to affirmatively prove particularized prejudice." Id. (citing Doggett, 505 U.S. at 654-55). Our supreme court has explained that "when evaluating this factor courts must be aware that the speedy trial right is designed: (1) to prevent undue and oppressive incarceration prior to trial; (2) to minimize anxiety and concern accompanying public accusation; and (3) to limit the possibilities that long delay will impair the defense." Id. As previously noted, the Defendant contends that the delay in her case impaired her defense, one of the three reasons for which the speedy trial right was designed. Specifically,

she noted that two of her former co-workers were deceased at the time of trial and that many others she worked with were extremely difficult to find.

The Court in Barker held that prejudice is obvious if a witness dies or disappears during a delay. 407 U.S. at 532. Nevertheless, we conclude that, considering the factors on balance, the trial court properly denied the Defendant's motion to dismiss for lack of a speedy trial. See id. at 530 (noting that the four-factors are a balancing test). The Defendant failed to assert her right to a speedy trial until five years after her indictment was issued. Once she asserted this right, her trial was conducted less than one month later. Additionally, the record reflects that, at a minimum, the Defendant acquiesced in the delay. Further, the Defendant has failed to show what the now-deceased witnesses' testimonies would have been if the trial had been conducted earlier and how such testimony would have been favorable to her case and has not even named these now difficult to find witnesses. It is for these reasons we conclude that the Defendant is not entitled to relief on this issue.

### *Ineffective Assistance of Counsel*

The Defendant contends that she received the ineffective assistance of counsel. Specifically, the Defendant states that trial counsel failed to do the following: (1) interview her to determine all relevant facts of the case, noting that trial counsel only met with her twice, briefly, before trial; (2) investigate whether the cash register software in question had been changed; (3) conduct an independent test of the cash register; (4) review the security tape footage; (5) interview the Defendant's co-workers to determine if they possessed potentially exculpatory evidence and preserve their testimony, namely Joan Corlew and Mary Watkins who were deceased at the time of trial; and (6) "properly explain developments in her case to the extent necessary . . . to permit her to make informed decisions," noting that she was not properly informed as to her right to testify. The State responds that the Defendant has failed to show that the security tape footage was changed or how such change would have affected the outcome at trial, that the Defendant failed to identify any footage that would have been exculpatory, that no witnesses were presented at the motion for new trial hearing, that the record reflects that the Defendant signed a waiver of her right to testify, and that the Defendant's denial of any guilt was presented to the jury.

Although a defendant may raise an ineffective assistance of counsel claim on direct appeal, this court has repeatedly noted that "the practice . . . is 'fraught with peril' since it 'is [typically] impossible to demonstrate prejudice as required'" at this stage of the proceedings. State v. Blackmon, 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001) (citations omitted). Nevertheless, there is no prohibition against litigation of ineffective assistance of counsel claims on direct appeal, as opposed to collateral proceedings. E.g., State v. Burns, 6 S.W.3d

453, 461-63 (Tenn. 1999) (granting relief in direct appeal on ineffective assistance of counsel claim); see State v. James Paris Johnson, No. E2008-02555-CCA-R3-CD, 2010 WL 3565761, at *17 (Tenn. Crim. App. Sept. 15, 2010).

The same standard applies to claims of ineffective assistance of counsel raised on direct appeal and post-conviction proceedings. See Burns, 6 S.W.3d at 461 n.5 (emphasis added). In a post-conviction proceeding, the burden is on the petitioner to prove the underlying facts of counsel's alleged error by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009). Once a defendant/petitioner establishes the fact of counsel's alleged error, the trial court must determine whether the errors resulted in the ineffective assistance of counsel. Dellinger, 279 S.W.3d at 293; see Strickland v. Washington, 466 U.S. 668, 687 (1984).

On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the post-conviction court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458. The post-conviction court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation was deficient, thus fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697, 700. The Strickland standard has also been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland, 466 U.S. at 687; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

After thorough consideration of the record and the applicable authorities, we conclude that the trial court properly concluded that the Defendant failed to show that trial counsel's representation was ineffective. Addressing each argument in turn, she first contends that trial counsel failed to interview her to determine all relevant facts of the case, noting that trial counsel only met with her twice, briefly, before trial. However, the Defendant fails to explain what any additional meetings with trial counsel would have revealed and how such revelations would have affected the outcome of her trial. Second, the Defendant cites trial counsel's failure to investigate whether the cash register software in question had been changed. However, she again fails to note what effect a change of cash register software, if so proven, would have had on her trial. Next, she states that trial counsel failed to conduct an independent test of the cash register. However, not only has she again failed to demonstrate what benefit independent testing would have provided to her case, but she also failed to conduct and provide such test at the hearing for the trial court's consideration. See Demarcus Sanders v. State, No. W2012-01685-CCA-R3-PC, 2013 WL 6021415, at *4 (Tenn. Crim. App. Nov. 8, 2013) (citing Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008) ("If a petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to do an act such as call a witness, present tangible documents for evidence, and/or file a motion to suppress, among other actions, the petitioner is generally obliged to present the witness or the other evidence at the post-conviction hearing in order to satisfy the Strickland prejudice prong.")).

Regarding trial counsel's alleged failure to review the security tape footage, the Defendant has failed to establish that trial counsel did not view the security tape footage, and as stated above, even if she had proved that trial counsel failed to view the footage, she has neither shown nor alleged how this failure prejudiced her case. The Defendant also contends that trial counsel was deficient for failing to interview the Defendant's co-workers to determine if they possessed potentially exculpatory evidence and preserve their testimony,

namely Joan Corlew and Mary Watkins who were deceased at the time of trial. However, the Defendant has not shown that their testimony would have been helpful to her defense nor that they would have testified at all. She does state that their testimony could have refuted that of Mr. Patton's, but so could both her and Ms. Stewart's testimony. The Defendant has failed to show how these two witnesses and other unidentified, difficult to locate witnesses would have affected her case. Finally, she contends that trial counsel failed to "properly explain developments in her case to the extent necessary . . . to permit her to make informed decisions," noting that she was not properly informed as to her right to testify. However, the record belies this claim with respect to her decision to testify. After the State rested its case, trial counsel requested time to confer with his client. Afterward, he informed the court that the Defendant had chosen not to testify. The trial court then went over the waiver of right not to testify, and the Defendant signed the waiver form, stating that she was doing so knowingly and voluntarily. At no point did the Defendant inform the court that she was declining to testify solely on trial counsel's instruction, nor did she ask any questions. In sum, even if we were to assume that trial counsel was deficient, the Defendant has failed to show how any of these alleged deficiencies prejudiced her. Therefore, the Defendant has failed to show that the trial court erred in finding that trial counsel's representation was effective.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE